[No. G034550. Fourth Dist., Div. Three. May 23, 2005.]

ORANGE COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
CLIFFORD RICKETSON et al., Real Parties in Interest.

## Counsel

Bill Lockyer, Attorney General, Douglas M. Press, Assistant Attorney General, Thomas R. Yanger and Mary Dahlberg, Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

Steven J. Brewer for Real Party in Interest Clifford Ricketson.

Law Offices of Albert M. Graham, Jr., & Associates and Albert M. Graham, Jr., for Real Party in Interest Patti Ricketson.

OPINION

**RYLAARSDAM, Acting P. J.**—The Orange County Department of Child Support Services and Deputy Department Counsel Constance Bailey seek extraordinary relief from the imposition of sanctions against them for prosecuting a nonmeritorious contempt proceeding against Clifford Ricketson. We find the trial court erred in failing to transfer the sanctions hearing to the judicial officer who heard the contempt proceeding. Accordingly, we grant the petition.

## FACTS

Patti Ricketson sought help from the department in collecting unpaid child support from her ex-husband, Clifford. She signed a declaration stating Clifford had failed to pay court-ordered child support in the amount of $463 per month for 21 months during the period from February 2001 to July 2003. The department filed an order to show cause re contempt of the child support order, which was set before Commissioner James L. Waltz.

At arraignment, Clifford pleaded not guilty, claiming payment directly to Patti as a defense. Bailey, the prosecuting deputy, asked for "all proof and documentation" of payment at least two weeks before trial. Clifford's counsel, Steven Brewer, objected. "It's been my experience that if I meet with the . . . Department of Child Support Services, [it] will go through the list of items and then [it] will dismiss all the individual counts that he has made payments on, which will leave him with two or three counts. [¶] And then the court won't get the flavor of the fact that [Patti] lied about 14 times on the declaration. So I think I shouldn't have to produce any of those documents, any of those cancelled checks until the time of trial."

Commissioner Waltz acknowledged that family law contempt hearings were handled as "quasi criminal proceedings, and yet it's clear as butter on a mirror as to what criminal rules apply to these proceedings." Brewer explained he wanted to save the checks for impeachment and also argued, "[Clifford] has a right not to testify, and certainly bringing in cancelled checks is testimony. He is producing evidence to convict himself or exonerate himself." Bailey stated her goal was to resolve the issues and asserted the department's right to reciprocal discovery. The court explained, "The problem with that is that you, the county, have started this proceeding through the criminal contempt process, so they simply are meeting the challenge head on. [¶] And I think Mr. Brewer is going to tell me that if you want to handle this as an arrears issue, that might be okay. But you have set the program, and he is going to meet it, so I think I get the flavor." The court refused to order Clifford to produce the checks but "reserve[d] the right to continue things" to avoid a "trial by ambush."

At trial, after Patti testified on direct, Brewer began his cross-examination by handing Bailey copies of the cancelled checks. Bailey objected, and the court granted her time to review the checks, admonishing both attorneys "to have no contact with the witness" in the interim. "I want to make sure her testimony is her own." When the trial resumed two months later, Brewer cross-examined Patti with the cancelled checks; she did not recall receiving any of them but acknowledged her signature endorsing each one. On redirect, Patti testified she considered checks with "child support" in the memo to be for child support and the undesignated checks to be for other extra expenses.

Near the end of Patti's testimony, when proceedings were being recessed for the day, the court asked Bailey whether she wanted to amend the petition. "Read nothing into this question. [¶] But because I know the county has not had opportunity to speak to [Patti] because I ordered you not to, over your objection, and now having heard probably most of her testimony, is there any amendment you wish to make to the petition? [¶] I ask that so we can try to shorten the proceedings, if possible." Bailey acknowledged there were five checks with a "child support" notation, "so there would be five counts that the county would be agreeing that [Clifford] had made payment in a certain amount to," but she declined to dismiss any of the counts "at this point." The court responded, "All right. If the county does reach a different conclusion or has time to further reflect and comes to a different conclusion, notify Mr. Brewer so we can try to, as I mentioned, shorten the proceedings."

After the department rested, Clifford made a motion for nonsuit, claiming the department had not proved his willful violation of the support order. He argued the checks showed he had overpaid for the period, even if he had missed a month or two, and the department should have dismissed the contempt as soon as he provided copies of the cancelled checks. The motion was denied, and Clifford testified in support of his defense.

The court acquitted Clifford on all counts. Commissioner Waltz easily found a reasonable doubt as to the willfulness of Clifford's nonpayment for all the counts except 11 and 12, and 17 through 21. The court considered those 7 counts "closer" and observed its determination was based on the credibility of the parties. Because Clifford had a pattern of paying, the court had "no reason to disbelieve his testimony" that he paid cash for the months represented by counts 11 and 12. Clifford testified he believed his obligations represented by counts 17 through 21 were satisfied by signing over a bail check and purchasing a car for his daughter. The court found this testimony raised a reasonable doubt as to the willfulness of his nonpayment.

Clifford filed an order to show cause re sanctions (OSC) against the department and Bailey pursuant to Code of Civil Procedure sections 128.5 and 128.7 and Family Code section 271, arguing Bailey's refusal to dismiss after she received the cancelled checks was "continued prosecution of a non-meritorious frivolous action." The documents submitted with the motion included the reporter's transcript for October 20, 2003, which was the first day of trial that ended in the granting of the continuance for Bailey to review the checks.

The OSC was set before Judge Nancy Pollard because the case was part of her direct calendar inventory, and Judge Pollard denied the department's repeated requests that it be transferred to Commissioner Waltz. The department argued it was unable to follow its normal practice of going over the cancelled checks with Patti. "Just because he hands me, you know, checks, doesn't mean they automatically get credit. We do have to confirm with the custodial parent. We have to confirm it was child support, not a gift. Since the court said you can't talk to her, our hands were tied."

Judge Pollard concluded sanctions were warranted because she believed Bailey knew some of the information in the department pleadings and moving papers was not correct and proceeded to put Patti on the stand nonetheless; Judge Pollard stated Bailey should have investigated the documentation further before proceeding. "[T]here was two months to examine these checks. Line them up, check them against whatever the document was that [Patti] signed under penalty of perjury as to monies she didn't receive. [¶] Was there ever an attempt on the part of . . . Ms. Bailey to go to the judge with some kind of a motion saying Your Honor, we understand that you have ordered us—if, in fact, that's what he said, [not to] . . . speak to the petitioner, we are concerned about the information that has been provided and there's a request and an order from the judge that there will not be a trial by ambush, so could we seek the leave of court to rescind, vacate, suspend the order that we can speak to the petitioner to verify the document which appears to be a valid defense as opposed to gathering up your gun and going duck hunting—which it looks like what it was, it looks like it was a shotgun approach with no consideration to the proof that was presented."

Judge Pollard also concluded Brewer's motivation for refusing to provide the checks before trial was not to prove that Patti was lying. "I think it was . . . an attorney's way of telling the judge that there was some serious impeachment information, rebuttal information to which ordinarily in a discovery process he would be bound to provide but in the case of the criminal defense, he doesn't have that same duty. [¶] I think without betraying the confidentiality and trust that his client has in him, he was letting the court know that there was some information [the] People needed. [¶] The

fact that Ms. Bailey either didn't pick up on it, took it as an affront to challenge him or refused to follow up on it I think is a serious, serious breach of her duty and her ethical obligation as a representative of the People of the State of California."

Judge Pollard ordered the department to pay $1000 as sanctions and $1000 as attorney fees, Bailey to pay $1500 as sanctions and $1000 as attorney fees, and Patti to pay $1000 as sanctions and $1000 as attorney fees. The sanctions and fees were all payable to Brewer.

## DISCUSSION

Bailey and the department contend that Judge Pollard erred in failing to grant their motion to transfer the sanctions hearing to Commissioner Waltz because he is in a better position than she to determine the nature of Bailey's conduct. We agree.

First, however, we consider which statute would support a sanctions award in this case. Clifford requested sanctions under Code of Civil Procedure sections 128.5 and 128.7 and Family Code section 271. Code of Civil Procedure section 128.7 does not apply because the support order was filed before January 1, 1995. (Code Civ. Proc., § 128.7, subd. (i); see *Levy v. Blum* (2001) 92 Cal.App.4th 625, 640–641 [112 Cal.Rptr.2d 144].) Furthermore, the safe harbor provisions of section 128.7, providing that a litigant has 21 days after notice to withdraw or correct the sanctionable conduct, were not followed. (Code Civ. Proc., § 128.7, subd. (c)(1) & (2).) Family Code section 271 allows the imposition of sanctions for the conduct of a party or an attorney that frustrates the policy of promoting settlement and cooperation. The sanction can be imposed only against a party, however, and is "payable only from the property or income of the party against whom the sanction is imposed." (Fam. Code, § 271, subd. (c).) Thus, sanctions are recoverable, if at all, only under Code of Civil Procedure section 128.5.

■ That section authorizes the imposition of sanctions in the form of attorney fees or other expenses "incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (Code Civ. Proc., § 128.5, subd. (a).) Whether an action is frivolous is governed by an objective standard. But the statute also requires a finding of subjective bad faith, i.e., "a showing of an improper purpose" (*Levy v. Blum, supra*, 92 Cal.App.4th at p. 635), to support a sanctions award. Although the prosecution of an action " 'totally and completely without merit' " is evidence of subjective bad faith, it does not settle the issue. (*Shelton v. Rancho Mortgage & Investment Corporation* (2002) 94 Cal.App.4th 1337, 1345 [115 Cal.Rptr.2d 82].)

Thus, it was necessary for Judge Pollard to make a subjective finding of bad faith on Bailey's part to justify her sanctions order. But, as we explain, the record does not support that finding.

In *Abbott v. Mandiola* (1999) 70 Cal.App.4th 676 [82 Cal.Rptr.2d 808], a different panel of this court held that the judge who declares a mistrial must also hear a request for sanctions against anyone causing the mistrial. (*Id.* at p. 678.) The trial judge declared a mistrial based on a discrepancy between the defendant's deposition testimony and his testimony at trial. The sanctions motion, which was heard and granted by a different judge, claimed the discrepancy was intentional.

The court pointed out that Code of Civil Procedure section 661 requires motions for new trial to be heard by the same judge who presided over the trial because " 'a judge who has heard the evidence, examined the witnesses, and made a study of the law applicable to the facts in a case is best qualified to rule upon the weight and value of the testimony of such witnesses, as well as upon other questions presented by the motion . . . .' [Citation.]" (*Abbott v. Mandiola, supra,* 70 Cal.App.4th at p. 682.) Extending that principle to the sanctions motion, the court held the assessment of the nature of the defendant's conduct had to be made by the trial judge. "[The judge hearing the sanctions motion] was not present when [the defendant] testified in alleged contradiction to his deposition. He did not have access to the body language or vocal indicia which might have revealed to [the trial judge] whether the [defendant] was lying, or simply confused, or under some semantic misimpression. Yet in ruling on the sanction motion, [the judge] unhesitatingly determined that the discrepancy in [the defendant's] testimony was not the product of a good faith mix-up, but a deliberate bad faith ploy. . . . [¶] By contrast, only [the trial judge] was in a position to truly assess whether [the defendant] was either (a) a bald-faced liar oblivious to the consequences to his adversary of a straight-out lie . . . , (b) an innocent litigant with a hazy memory, or (c) something in between." (*Id.* at p. 683.)

■ As in *Abbott*, Judge Pollard improperly drew conclusions about Bailey's state of mind, and about the states of mind of Brewer and Commissioner Waltz, without having been present at the contempt proceedings. She could not have drawn the inference of Bailey's subjective bad faith from a finding that the proceeding was totally and completely without merit because she did not have the entire trial transcript before her. Without Clifford's testimony and the record of the exchanges between counsel and Commissioner Waltz, Judge Pollard could not have validly determined whether the proceeding was totally and completely without merit. Furthermore, Commissioner Waltz's refusal to grant a nonsuit after the close of the department's case belies a finding that the proceeding was frivolous.

More importantly, Commissioner Waltz was in a much better position than Judge Pollard to decide whether Bailey's conduct was sanctionable. He heard the evidence, observed Bailey's demeanor as well as that of her opponent, Brewer, and imposed the order restricting contact between Bailey and Patti.

Clifford points out that Commissioner Waltz was sitting as a child support commissioner when he heard the contempt proceeding, and he is statutorily authorized only to hear "actions . . . to establish, modify or enforce child or spousal support . . . ." (Fam. Code, § 4251, subd. (a).) He claims the sanctions motion was not part of the child support proceeding; thus, he argues, Commissioner Waltz lacked authority to hear it.

In 1999, the Legislature created a new state agency for child support enforcement, the Department of Child Support Services. (Fam. Code, § 17200.) This legislative action was motivated in part by the funding requirements of title IV-D of the federal Social Security Act (42 U.S.C. § 651 et seq.; Fam. Code, § 17303, subd. (a).) and in part by the "inefficiencies introduced by involving multiple layers of government in child support enforcement operations." (Fam. Code, § 17303, subd. (d).) Each county was directed to establish a local child support agency to be responsible for "establishing, modifying, and enforcing child support obligations, including medical support, enforcing spousal support orders established by a court of competent jurisdiction, and determining paternity in the case of a child born out of wedlock." (Fam. Code, § 17400, subd. (a).) In the County of Orange, the department is the local child support agency.

All enforcement actions or proceedings filed by a local child support agency pursuant to section 17400, and "[a]ll actions or proceedings filed by a party other than the local child support agency to modify or enforce a support order . . . for which enforcement services are being provided pursuant to Section 17400," must be referred for hearing to a child support commissioner. (Fam. Code, § 4251, subd. (a).) Upon request, the commissioner shall join issues of custody, visitation and protective orders with the action filed by the local child support agency, but if these issues are contested, the commissioner may hear them "only if the court has adopted procedures to segregate the costs of hearing Title IV-D child support issues from the costs of hearing other issues pursuant to applicable federal requirements." (Fam. Code, § 4251, subd. (e)(3).) "The child support commissioners shall specialize in hearing child support cases, and their primary responsibility shall be to hear Title IV-D child support cases." (Fam. Code, § 4252, subd. (a).)

■ Bailey contends, contrary to Clifford's argument, that the sanctions hearing was a title IV-D child support hearing and was required by Family Code section 4251, subdivision (a) to be heard by Commissioner Waltz.

California Rules of Court, rule 5.300(c) defines a title IV-D support action as "an action for child or family support that is brought by or otherwise involves the local child support agency under Title IV-D of the Social Security Act." Although the sanctions hearing was separate from the contempt hearing, requiring its own notice and resulting in a separate appealable order, it is based on the record in the contempt proceedings and thus arises out of it. Both judicial economy and common sense compel us to conclude that the same judicial officer should hear both. (See *In re Steven A.* (1993) 15 Cal.App.4th 754, 769 [19 Cal.Rptr.2d 576].)

■ Clifford asserts that his original stipulation to Commissioner Waltz sitting as a temporary judge does not extend to the sanctions hearing; he claims he can refuse to stipulate to Commissioner Waltz if we remand the sanctions hearing to him. Upon stipulation of the parties, a court commissioner is empowered to adjudicate a "cause" until its final determination. (Cal. Const., art. VI, § 21.) The determination of a cause encompasses subsequent proceedings that are its "direct progeny," but not those considered "ancillary" to the stipulated cause. (*Reisman v. Shahverdian* (1984) 153 Cal.App.3d 1074, 1095 [201 Cal.Rptr. 194].) Direct progeny are those which are a continuation of the stipulated cause or question its finality, such as motions to vacate or reconsider. (*Ibid.*; *Walker v. San Francisco Housing Authority* (2002) 100 Cal.App.4th 685, 692 [122 Cal.Rptr.2d 758].) An ancillary proceeding, on the other hand, is heard on a separate record and seeks an independent judgment or reviewable order. (*Ibid.*) A contempt hearing, while related to the cause out of which it arose, is nonetheless considered ancillary to the cause and outside the scope of the parties' original stipulation to a temporary judge. (*Nierenberg v. Superior Court* (1976) 59 Cal.App.3d 611, 618 [130 Cal.Rptr. 847].) Because "[t]he parties have the power to define and circumscribe the authority of a temporary judge," stipulations to a temporary judge are narrowly construed. (*In re Steven A.*, *supra*, 15 Cal.App.4th at p. 768.)

■ The sanctions proceeding here arose out of the contempt hearing and is intimately related to it; however, it does not attack the contempt judgment but seeks a separately reviewable order. Accordingly, it is outside the scope of the stipulation the parties entered into when the contempt hearing began. In this context, however, the distinction makes no practical difference. Family Code section 4251, subdivision (c) provides that a child support commissioner "may hear the matter and make findings of fact and a recommended order" even if a party objects to him or her acting as a temporary judge. Although a judge must later review the order and entertain any objections to it by the parties, the record will contain the commissioner's subjective findings.

## DISPOSITION

The petition is granted. The order imposing sanctions against the department and Bailey is vacated. The matter is remanded to the trial court with directions that the order to show cause re sanctions shall be heard by Commissioner Waltz. If the parties refuse to stipulate to Commissioner Waltz acting as a temporary judge, he shall hear the matter under Family Code section 4251, subdivision (c). Petitioners are entitled to costs.

Moore, J., and Fybel, J., concurred.