[No. B188224. Second Dist., Div. Eight. Oct. 30, 2006.]

JANET E. BURKLE, Plaintiff and Appellant, v.
RONALD W. BURKLE et al., Defendants and Respondents.

[No. B188735. Second Dist., Div. Eight. Oct. 30, 2006.]

In re the Marriage of JANET E. and RONALD W. BURKLE.
JANET E. BURKLE, Appellant, v.
RONALD W. BURKLE, Respondent.

388

## Counsel

Philip Kaufler; Hugh John Gibson; and Hillel Chodos for Plaintiff and Appellant.

Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, Patricia L. Glaser, Nabil L. Abu-Assal, Bryan M. Sullivan; Wasser, Cooperman & Carter, Dennis M. Wasser, Bruce Cooperman and Michael Brourman for Defendant and Respondent Ronald W. Burkle.

Gaelle H. Gralnek for Defendant and Respondent Ernst & Young LLP.

Parker, Milliken, Clark, O'Hara & Samuelian and William E. Weinberger for Defendant and Respondent KPMG LLP.

OPINION

BOLAND, J.—

## SUMMARY

While a marital dissolution proceeding was pending, a wife brought a separate civil action against her husband and two accounting firms. The wife claimed her husband failed to make two interim monthly payments required under the terms of a stipulation and order in the dissolution proceeding, and further claimed his conduct constituted intentional infliction of emotional distress. The wife also sought a declaration that the husband and the accounting firms were required to provide her with tax returns and related documents she had previously sought in the dissolution proceeding. Under well-established precedent precluding parties to dissolution proceedings from engaging in "family law waged by other means" (*Neal v. Superior Court* (2001) 90 Cal.App.4th 22, 27 [108 Cal.Rptr.2d 262]), we affirm the trial court's judgment of dismissal.

After the trial court in the civil action sustained the husband's demurrer, the husband sought sanctions in the family law court. The family law court granted the husband's motion, ordering the wife to pay $32,950 to the husband as sanctions under Family Code section 271, and ordering the wife and her attorneys to pay that sum to the husband as sanctions under Code of Civil Procedure section 128.7. We affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Janet E. Burkle and Ronald W. Burkle were married in 1974. After Ms. Burkle filed a petition for marital dissolution in June 1997, the Burkles agreed to attempt a reconciliation. In November 1997, they executed a postmarital agreement resolving all present and future financial issues between them. They lived together for several more years. In June 2003, Ms. Burkle again filed a petition for dissolution of marriage in which she asserted the postmarital agreement was void and unenforceable. The parties stipulated to the appointment of Retired Judge Stephen M. Lachs to hear and

determine all issues and disputes arising out of the postmarital agreement and their marital relationship, including child custody, child and spousal support, and property rights.

In December 2004, Judge Lachs issued an order finding the postmarital agreement valid and enforceable, and this court affirmed the order. (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712 [43 Cal.Rptr.3d 181].) While the litigation over the postmarital agreement was pending, the Burkles stipulated to the entry of an order by Judge Lachs. Among other matters, the order required Mr. Burkle to continue to pay Ms. Burkle $50,000 per month, payable on the first day of each month, beginning on April 1, 2005. The monthly payments were unallocated, and were subject to future allocation by the court, "either as a credit against the payments due from [Mr. Burkle] to [Ms. Burkle] under the [postmarital] Agreement, or as spousal support, or as child support, or as some combination of the above." The stipulated order was filed August 1, 2005, as was a judgment of dissolution as to status only.

Eight days later, Ms. Burkle filed a civil action against Mr. Burkle and the Burkles' accountants, Ernst & Young LLP and KPMG LLP. She alleged that on or about June 15, 2005, Mr. Burkle telephoned her and told her he knew she had incurred some unusual expenses and had decided to give her an extra $100,000, which would be subject to future allocation, like the other $50,000 payments. Mr. Burkle then withheld the $50,000 payments due on July 1 and August 1, allegedly because he believed Ms. Burkle had instigated an Internal Revenue Service (IRS) audit or investigation, a belief he later admitted was erroneous. Ms. Burkle's complaint further alleged she did not know whether an IRS audit or investigation was conducted or pending; she did not have complete and unredacted copies of her joint tax returns; and her demands for copies of the tax returns in the dissolution proceeding resulted only in her receipt of redacted copies from Mr. Burkle. Her complaint asserted causes of action for "enforcement of judgment" and for intentional infliction of emotional distress against Mr. Burkle, and sought payment of the $100,000 plus interest, as well as compensatory and punitive damages on her tort claim. In a cause of action for declaratory relief, she sought a declaration that Mr. Burkle and the accountants were obligated to provide her with information about the existence vel non of any IRS investigation and with unredacted copies of all joint tax returns and related workpapers.

Mr. Burkle and the accounting firms filed demurrers to the complaint, together with requests for judicial notice of documents filed in the dissolution proceeding. The trial court sustained each demurrer without leave to amend. Judgment of dismissal was entered.

Meanwhile, after Ms. Burkle filed her civil action, Mr. Burkle served Ms. Burkle's counsel with a copy of a motion for sanctions he intended to

file in the dissolution proceeding if she did not voluntarily dismiss the civil action. (See Code Civ. Proc., § 128.7, subd. (c)(1).) When she did not do so, Mr. Burkle filed his motion for sanctions before Judge Lachs. After the trial court in the civil action sustained Mr. Burkle's demurrer, a hearing was held before Judge Lachs on the sanctions motion. Judge Lachs found that by filing her civil action, Ms. Burkle knowingly acted in a manner which frustrated the policy of the law to reduce litigation costs and encourage cooperation between litigants and attorneys. He ordered her to pay $32,950—which represents Mr. Burkle's attorney fees and costs in connection with the civil action—to Mr. Burkle as sanctions under Family Code section 271. Judge Lachs also found Ms. Burkle's contentions with respect to the proper forum for her action were frivolous, and ordered her and her attorneys to pay $32,950 to Mr. Burkle as sanctions under Code of Civil Procedure section 128.7.

Ms. Burkle filed appeals from the judgment of dismissal in the civil action and from Judge Lachs's order awarding sanctions. This court consolidated the two cases for purposes of decision.

## DISCUSSION

Ms. Burkle's lawsuit against her husband and the Burkles' accountants is a textbook example of an improper attempt to wage "family law . . . by other means . . . ." (*Neal v. Superior Court, supra,* 90 Cal.App.4th at p. 27 (*Neal*).) When a dissolution proceeding is pending, neither party to that proceeding has the right to file a separate civil action to enforce an interim support order issued in the dissolution proceeding. The same rule applies to filing a purported tort action arising from conduct that relates to the interim support order and, but for the dissolution proceeding, would not have occurred. Neither *Thomas v. Thomas* (1939) 14 Cal.2d 355 [94 P.2d 810], upon which Ms. Burkle relies, nor any other precedent may be read to support a contrary conclusion. Accordingly, the trial court properly sustained the demurrers of Mr. Burkle and the accounting firms without leave to amend. Because well-established precedent precluded Ms. Burkle from filing a separate civil action, the subsequent award of sanctions by Judge Lachs was not an abuse of discretion. We affirm both the judgment in the civil action and Judge Lachs's order.

A. *The civil action.*

1. *Mr. Burkle's demurrer.*

In *Neal* and several other cases, the courts have made it clear that family law cases "should not be allowed to spill over into civil law . . . ."

(*Neal, supra,* 90 Cal.App.4th at p. 25.) *Neal* directed the trial court to sustain an ex-wife's demurrers to her former husband's causes of action for breach of contract, fraud, abuse of process and declaratory relief. The court observed that almost all events occurring in family law litigation can be reframed as civil law actions, and that it is "incumbent on courts to examine the substance of claims, not just their nominal headings." (*Ibid.*) *Neal* continued: "The instant case is a perfect example. [The husband] has sued his ex-wife for breach of contract simply because she allegedly did not comply with the terms of a family law judgment. He has sued for fraud based on statements made at the family law OSC . . . . He has sued her for abuse of process based on false representations in family law court. He has sued her for declaratory relief based on the dispute in the family law case over whether he has paid what he owes under the family law judgment. In substance this case is a family law OSC with civil headings." (*Id.* at p. 26.)

Ms. Burkle's suit against Mr. Burkle tracks the *Neal* case in all relevant particulars. She has sued Mr. Burkle "simply because [he] allegedly did not comply with the terms of a family law [order]." (*Neal, supra,* 90 Cal.App.4th at p. 26.) As in *Neal,* Ms. Burkle's "civil complaint is essentially about whether [Mr. Burkle] paid the money that the family law [order] obligated him to pay," and "the substance of [Ms. Burkle's] claims against [Mr. Burkle] all stem directly from the family law case." (*Ibid.*) Ms. Burkle's suit is even more egregious because she sued over an interim order in a pending proceeding. In short, "this case is a family law OSC with civil headings" (*ibid.*), and Ms. Burkle was required to address her claims to the family law court. (See also *d'Elia v. d'Elia* (1997) 58 Cal.App.4th 415, 417, 432 [68 Cal.Rptr.2d 324] (*d'Elia*) ["[o]nce again this court confronts a family law case which has been allowed to metastasize into something else"; "when the fraud claim is predicated on misrepresentations of value of community stock made in the process of dissolution, the remedy is the traditional one of timely seeking to set aside the judgment or marital settlement agreement in the appropriate forum, not a securities fraud suit"]; *Askew v. Askew* (1994) 22 Cal.App.4th 942, 965–966 [28 Cal.Rptr.2d 284] [trial court erred in failing to dismiss husband's civil action, which "sought to preempt the family law court from determining issues it already had jurisdiction to determine" and which "were the province of the family law court in the first place"].)

Despite the ample precedents, Ms. Burkle insists she has the option of bringing a separate civil action to enforce the family law court's interim support order. She claims that her civil action, unlike those in *Neal* and other cases, is an action "to enforce the (stipulated) judgment requiring Ron to pay her $50,000 a month for each of July and August, 2005," and is governed by *Thomas v. Thomas, supra,* 14 Cal.2d at pages 358–359. For multiple reasons, Ms. Burkle is mistaken.

First, the order she seeks to enforce is not a judgment but is an interim order for the payment of monies expressly subject to future allocation by the family law court. The only "judgment" so far entered in this case is the judgment of dissolution as to status only.

Second, nothing in *Thomas v. Thomas* suggests that the principle established in *Neal, Askew* and other cases does not apply to Ms. Burkle. In *Thomas*, a divorce decree—a "final judgment of the trial court" (*Thomas v. Superior Court* (1935) 9 Cal.App.2d 383, 388–389 [49 P.2d 898])—was entered in Butte County requiring the husband to pay the wife alimony. The husband defaulted in his payments for over five years, and the wife brought suit in Los Angeles County, where both parties then resided. The trial court granted an ordinary money judgment, but refused to incorporate any provision for future installments of alimony. (*Thomas v. Thomas, supra*, 14 Cal.2d at p. 356.) The Supreme Court reversed the trial court's judgment, observing that the purpose of the action was to obtain a continuing judgment enforceable by contempt in Los Angeles County where both parties lived, and the wife was entitled to a decree directing payment of amounts due and to become due under the Butte County judgment. (*Id.* at pp. 358–360.) *Thomas* plainly has no bearing on this case. *Thomas* involved the enforcement of a final judgment, and enforcement was sought in a different court because both parties had moved to that location. It is not possible to read *Thomas* as authorizing a spouse in a pending dissolution proceeding in Los Angeles to file a separate civil action, also in Los Angeles, to enforce an interim support order that is expressly subject to future allocation in the dissolution proceeding.[1]

Third, no other authorities support the propriety of Ms. Burkle's civil action. She insists that not all husband-wife disputes must be resolved in family court, and that spouses may bring tort and contract actions against each other. Of course, that is a correct statement of the law, because interspousal immunity no longer exists. However, the principle has no application when a dissolution proceeding is pending, and it certainly has no application when a spouse is attempting to enforce an interim order in a pending dissolution proceeding.[2] We thus have no occasion in this case to

---

[1] Ms. Burkle also argues that, even if she had presented her claim to the family law court, it would have to be handled by someone other than Judge Lachs, because the terms of the stipulation for his appointment as a temporary judge excluded "post-judgment enforcement and modification proceedings." We fail to see the relevance of this contention, which can likewise be resolved by the family law court. Moreover, because no judgment has been entered except as to status, Ms. Burkle's claim cannot be considered a "post-judgment enforcement" proceeding.

[2] Ms. Burkle cites *d'Elia, supra*, 58 Cal.App.4th 415, in which the court held a former wife could not bring a securities fraud claim against her ex-husband predicated on misrepresentations of value of community stock made in the process of dissolution. In *d'Elia*, the wife also

draw a line between spousal cases that might properly be brought in a separate civil action and those that may not.[3] Ms. Burkle's lawsuit clearly falls on the far side of any line that might conceivably be drawn. Her dissolution proceeding is still pending, and her complaint arises from an interim support order in that very proceeding, in which there has been no final judgment, and over which the family law court clearly has jurisdiction. Other cases on the subject merely serve to demonstrate the propriety of the trial court's disposition in this case. For example:

—In *Neal* and *d'Elia*, the separate civil actions were improper even though they were filed after final judgments in the family law proceedings had been entered, rather than during the pendency of the dissolution proceeding.

—In *Askew*, the family law court "*already* had subject matter jurisdiction to divide the community property," so the civil trial court in which the husband brought a separate action had no jurisdiction to determine the character of five properties the husband claimed were his separate property. (*Askew v. Askew, supra,* 22 Cal.App.4th at p. 962, original italics.)

—In *Bidna v. Rosen* (1993) 19 Cal.App.4th 27, 29–30 [23 Cal.Rptr.2d 251], the husband could not bring a malicious prosecution action based on six totally meritless ex parte applications and orders to show cause filed by his wife in their family law proceedings.

—See also *Greene v. Superior Court* (1951) 37 Cal.2d 307, 312 [231 P.2d 821] (because of continuing jurisdiction of Santa Barbara divorce court over

---

brought claims for intentional misrepresentation, negligent misrepresentation and breach of fiduciary duty, and was awarded about $3.9 million on those claims. (*Id.* at pp. 422–423.) Ms. Burkle erroneously asserts that the Court of Appeal "held that the civil trial court had jurisdiction over [those three] claims . . . , all of which were based on the husband's acts, statements and omissions in the course of the marital dissolution proceeding, and upheld the judgment in her favor on those causes of action." In fact, the Court of Appeal held nothing of the sort. The court expressly stated that its decision "[did] not address [the wife's] *right* to a recovery under those causes of action," because the husband did not challenge her right to a recovery, attacking only the sufficiency of the evidence of damages. (*Id.* at p. 423, original italics.) It is scarcely necessary to say that *d'Elia* is not authority for a proposition it did not consider. In any event, in *d'Elia* the dissolution proceeding was not pending when the civil action was brought. (*Id.* at p. 421.)

[3] See *Dale v. Dale* (1998) 66 Cal.App.4th 1172, 1175 [78 Cal.Rptr.2d 513] ("in the absence of a pending dissolution proceeding, a plaintiff who contends she suffered injury because her former spouse tortiously concealed community assets from her, thereby preventing her from fully presenting her case in the dissolution proceeding, is entitled to bring a subsequent tort action based on the alleged concealment"); contra *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 834 [102 Cal.Rptr.2d 743] (no tort remedy for concealment of community assets in a dissolution proceeding; "the *Dale* decision clearly was a major departure from existing law and its remedy has not been followed by any California court").

its custody awards, San Francisco court had no jurisdiction in mother's action to appoint a guardian), and *Kresteller v. Superior Court* (1967) 248 Cal.App.2d 545, 549–550 [56 Cal.Rptr. 771] (court which granted divorce had primary, continuing jurisdiction to modify its decree, and wife's independent action seeking child support in another court was precluded; divorce court which rendered decree ordinarily is in a better position to make a determination whether there has been a change of circumstances).

In the face of these authorities, Ms. Burkle does not cite a single case permitting a spouse to file a separate civil action over matters arising out of an order in a pending dissolution proceeding—no doubt because no such authorities exist.

We do not suggest by our resolution of this case that former spouses are required to bring any disputes with each other to the family court that presided over their dissolution proceeding. As *d'Elia* pointed out, "if [the husband] had sold [the wife] some worthless stock—the prototypical stock fraud—then their status as spouses would not preclude her from recovering." (*d'Elia, supra,* 58 Cal.App.4th at p. 432.) The wife in *d'Elia,* however, "want[ed] the special benefits of disclosure which come with being a spouse," and "want[ed] them in a transaction that would not have taken place except that it was required by the Family Code," but "does not want the confines of the traditional family law remedy." (*Ibid.*) Similarly, Ms. Burkle obtained the benefit of an interim support order, in a transaction that would not have occurred outside the family law court, but she seeks a remedy outside the family law court. *Neal, Askew, d'Elia,* and other authorities clearly tell us she cannot have it.

Finally, Ms. Burkle insists she is entitled to bring a separate tort claim for intentional infliction of emotional distress based on Mr. Burkle's conduct in retracting the $100,000 additional payment he proffered. She may not do so. As *Neal* observes, we must examine the substance of a claim rather than its nominal heading (*Neal, supra,* 90 Cal.App.4th at p. 25), and it is clear that the propriety of Mr. Burkle's conduct was a matter for the family law court. (See *Bidna v. Rosen, supra,* 19 Cal.App.4th at p. 30 [husband could not bring malicious prosecution claim arising out of family law proceedings and was "consign[ed] . . . to various family law remedies, which conspicuously do not include punitive damages and damages for emotional distress"; the "remedy for egregious conduct in family law court is for the family law bench to nip it in the bud with appropriate sanctions"].) Further, even if a separate civil action were permissible, the conduct alleged by Ms. Burkle is not, as a matter of law, " '[c]onduct . . . so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209 [185 Cal.Rptr. 252, 649 P.2d 894]; see *KOVR-TV, Inc. v.*

*Superior Court* (1995) 31 Cal.App.4th 1023, 1028 [37 Cal.Rptr.2d 431] ["[g]enerally, conduct will be found to be actionable where the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous" ' "].) This is not a case where reasonable jurors might differ on whether the conduct alleged meets the applicable standard.

■ In sum, no authority supported Ms. Burkle's filing of a civil action against Mr. Burkle over matters within the purview of the family law court, and the trial court properly dismissed her claims.

### 2. *The demurrers of the accounting firms.*

■ Ms. Burkle's action against Ernst & Young and KPMG is similarly defective. She sought a declaration that the accounting firms were obligated to provide her with information about the existence vel non of any IRS investigation and unredacted copies of all joint tax returns and related workpapers. Her claims against the accountants are, in substantial part, a repetition of disputes previously brought before Judge Lachs. Ms. Burkle seeks the same documents in this action that she sought in her marital dissolution action. Deposition subpoenas for the production of business records were served on the accounting firms in the dissolution proceeding; both accounting firms filed objections to those subpoenas; and Ms. Burkle failed to pursue the matter by seeking to compel their production. Having failed to do so, she may not now seek the same documents by filing an action in another department of the same court. (See *Plant Insulation Co. v. Fibreboard Corp.* (1990) 224 Cal.App.3d 781, 786–788 [274 Cal.Rptr. 147] [under the rule of exclusive concurrent jurisdiction, when two superior courts have concurrent jurisdiction over the subject matter and parties, the first to assume jurisdiction has exclusive and continuing jurisdiction; the rule does not require absolute identity of parties, causes of action or remedies sought; if the first court has the power to bring before it all the necessary parties, application of the rule is not precluded merely because the parties in the second action are not identical].) In this case, while the accounting firms are not parties to the dissolution action, the family law court had full power to require them to respond to Ms. Burkle's subpoenas relating to the tax returns, and could likewise require them to produce information on the alleged IRS audit. (See, e.g., *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 714 [21 Cal.Rptr.2d 200, 854 P.2d 1117] [when one spouse in a marriage dissolution proceeding seeks discovery from a third party, court is required to balance the need for discovery against the privacy interests of the third party].) ■ Accordingly, because the family law court had the power to require production of the records, which Ms. Burkle demanded in connection with the marital dissolution, she was required to seek relief in the marital

dissolution proceeding, not in a new action for declaratory relief. (See also *General of America Ins. Co. v. Lilly* (1968) 258 Cal.App.2d 465, 471 [65 Cal.Rptr. 750] [under Code Civ. Proc., § 1061, court may refuse to exercise power to grant declaratory relief where such relief is not necessary; availability of another form of relief will usually justify the refusal, which is within the trial court's discretion].) The demurrers of the accounting firms were properly sustained without leave to amend.

### B. *The sanctions order.*

The relevant terms of the statutes under which Judge Lachs awarded sanctions are these:

■ —Family Code section 271 allows the court to base an award of attorney fees and costs "on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (Fam. Code, § 271, subd. (a).) An award under section 271 "is in the nature of a sanction," and is payable only from the property or income of the party against whom it is imposed. (*Id.*, subds. (a) & (c).)

■ —Code of Civil Procedure section 128.7 allows sanctions to be imposed upon attorneys who present to the court claims, defenses or legal contentions not warranted by existing law, and allows sanctions against parties and attorneys when pleadings are presented primarily for an improper purpose, such as to harass or cause a needless increase in the cost of litigation. (Code Civ. Proc., § 128.7, subds. (b)(1), (2) & (c).)

A trial court's award of sanctions is reviewed under an abuse of discretion standard. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167 [128 Cal.Rptr.2d 65] [applying Code Civ. Proc., § 128.7]; *In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 180 [110 Cal.Rptr.2d 111] [applying Fam. Code, § 271].)

Ms. Burkle asserts several reasons for reversal of the sanctions order. None has merit.

First, Ms. Burkle argues her contentions about the propriety of a separate civil action were correct, and in any event "certainly arguable," so that her attorneys had both the right and the duty to make them on her behalf. As should be apparent from part A. of this opinion, we do not agree. Precedents such as *Neal* and *Askew* clearly preclude a party to a pending marital dissolution proceeding from bringing a civil action against the other spouse

over matters of which the family law court has jurisdiction, and Ms. Burkle's civil suit was indistinguishable from those precedents. Ms. Burkle's attorneys were well aware of the applicable precedents, because Ms. Burkle earlier had filed another civil action against Mr. Burkle, whose demurrer in that case was likewise sustained by another judge who expressly cited both *Neal* and *Askew*. Ms. Burkle's attempt to differentiate her civil action as the enforcement of a judgment, rather than a dispute clearly within the province of the family law court, was specious and plainly not "warranted by existing law . . . ." (Code Civ. Proc., § 128.7, subd. (b)(2).)

█ Second, Ms. Burkle contends that Code of Civil Procedure section 128.7 does not authorize a court in a marital dissolution proceeding to impose sanctions for conduct that occurred in a separate civil action. She cites no authority for this proposition, stating only—and likewise without authority—that section 128.7 is "manifestly designed as a tool to allow courts to regulate the conduct of parties and lawyers who appear before them in cases they are handling . . . ." We do not doubt that in most cases, sanctions are and should be awarded by the judge before whom the sanctionable conduct occurred, but this principle, like most rules of law, is not absolute. In this case, an exception to the usual rule is clearly in order for a number of reasons:

—No jurisdictional requirement exists preventing an award by a different judge. Indeed, we can easily posit circumstances—illness, reassignment, and so on—in which a different judge might necessarily rule on such a motion. Moreover, in *Neal* the court expressly directed the family law court "to make an appropriate attorney fee award in [the wife's] favor for having been dragged through this unnecessary excursion in the civil court." (*Neal, supra,* 90 Cal.App.4th at p. 27.) While *Neal* cited Family Code section 271, *Neal* nevertheless demonstrates that the conduct justifying sanctions need not occur before the judge imposing the sanctions. Code of Civil Procedure section 128.7 contains no intimation to the contrary, and we see no basis for inferring a different conclusion as a jurisdictional matter.

—In this case, the "conduct" precipitating the sanctions is the act of filing an action in a court where it clearly does not belong, in order to avoid litigating the matter before the family court judge who made the support order in the first place and who was thoroughly familiar with the parties and the issues. In this situation, it is difficult to see how the judge in the civil action would be in a better position than the family law judge to determine the propriety of sanctions for Ms. Burkle's forum-shopping conduct. Indeed, it seems to us the reverse is true. Moreover, the family law judge is the judge authorized to decide the propriety of an award of sanctions under Family Code section 271. To hold the family law judge cannot award sanctions under Code of Civil Procedure section 128.7 for the very same conduct for which he can

award sanctions under Family Code section 271 would be inefficient, unnecessary, and contrary to common sense.[4]

 —No doubt there are cases where the judge in whose court the sanctionable conduct occurred is the only appropriate judicial officer to award sanctions. But this would be so only when it is necessary for the judge awarding sanctions to make a subjective finding of bad faith to justify the sanctions order. (See *Orange County Dept. of Child Support Services v. Superior Court* (2005) 129 Cal.App.4th 798, 804–806 [28 Cal.Rptr.3d 877] (*Orange County*) [sanctions award under Code Civ. Proc., § 128.5 required a finding of subjective bad faith; imposition of sanctions by a judge who did not preside over the contempt proceeding was vacated because she improperly drew conclusions about the state of mind of the lawyer against whom sanctions were imposed without having been present at the proceeding; "[m]ore importantly, [the commissioner who presided] was in a much better position than [the judge] to decide whether [the lawyer's] conduct was sanctionable"].) By contrast, under section 128.7, whether an action is frivolous, as Judge Lachs found, is governed by an objective standard. (*Orange County, supra*, 129 Cal.App.4th at p. 804.) Section 128.7 "requires only that the conduct be 'objectively unreasonable' . . . ." (*Guillemin v. Stein, supra*, 104 Cal.App.4th at p. 167, citation omitted.) Moreover, Judge Lachs was in a better position than anyone else to determine whether the civil action was filed "primarily for an improper purpose, such as . . . to cause . . . needless increase in the cost of litigation." (Code Civ. Proc., § 128.7, subd. (b)(1).)

In short, neither jurisdictional nor policy bases exist to prevent the family law court from awarding sanctions under Code of Civil Procedure section 128.7 for the improper filing of an action in another court.

Third, Ms. Burkle asserts that if, as we have just held, the family law court had jurisdiction to impose sanctions under Code of Civil Procedure section 128.7, Judge Lachs could not do so, because the stipulation for his appointment "does not cover such a proceeding." This is because (1) Ms. Burkle's present counsel did not sign the stipulation, and (2) "it is doubtful whether the stipulation for appointment of Judge Lachs authorized him to impose

---

[4] The family law court has the authority to award attorney fees in "related" proceedings as well as in the family law action. "The court shall augment or modify the original award for attorney's fees and costs as may be reasonably necessary for the prosecution or defense of the proceeding, or any proceeding related thereto . . . ." (Fam. Code, § 2030, subd. (c); see *Askew v. Askew, supra*, 22 Cal.App.4th at pp. 965–966 [improper motive is not a prerequisite for a civil action to be "related" to a dissolution action under predecessor statute; even if husband acted completely in good faith in filing the civil action, the civil action sought to preempt the family law court from determining issues it already had jurisdiction to determine; family court erred in failing to award wife reasonable fees for defending the civil action].)

sanctions at all."[5] Ms. Burkle is incorrect on both counts. She offers no authority, and we know of none, suggesting successor counsel are not bound by a stipulation expressly authorized by the parties. And Ms. Burkle's assertion that Judge Lachs, as a temporary judge, had no jurisdiction to impose sanctions "at all," either on Ms. Burkle or her attorneys, is unfounded. The only authority she cites for this claim is *Orange County, supra,* 129 Cal.App.4th 798, which does not support her assertion. In *Orange County,* the parties entered into a stipulation that a commissioner sitting as a temporary judge would handle a contempt proceeding in connection with a child support order. After the father's acquittal, he sought sanctions against the Orange County Department of Child Support Services for the prosecution of a nonmeritorious contempt proceeding. In a later appeal, the father asserted his stipulation to the commissioner did not extend to the sanctions hearing. The court of appeal agreed, observing that the sanctions proceeding was outside the scope of the parties' stipulation because it did not challenge the judgment in the contempt proceeding and sought a separately reviewable order. (*Id.* at p. 807.) In this case, however, no judgment has been entered, and the Burkles' stipulation was, in any event, far broader than a stipulation for a single contempt hearing. The Burkles agreed Judge Lachs would determine "any and all issues and disputes, including, without limitation, all issues and disputes arising out of the . . . marital relationship, including, but not limited to child custody, child and spousal support, property, attorneys' fees and any pre-trial or post-trial motions or hearings." The claim that Judge Lachs did not have jurisdiction to impose sanctions is without merit.

Fourth, Ms. Burkle contends sanctions cannot be imposed against her under Code of Civil Procedure section 128.7, because the decision to proceed in a separate legal action was made by her attorneys, not by Ms. Burkle. She is correct that sanctions cannot be awarded against her for a violation of subdivision (b)(2), which specifies that the attorney, by submitting a pleading to the court, is certifying the claims and legal contentions in it are warranted by existing law or by a nonfrivolous argument for its extension, modification or reversal. (See Code Civ. Proc., § 128.7, subds. (b)(2) & (d)(1).) However, sanctions may be awarded against a party if other conditions in subdivision (b) are violated, including paragraph (1), which precludes pleadings "presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (*Id.,* subd. (b)(1).) Judge Lachs observed that the legal expense incurred by Mr. Burkle "to defeat this attempt by [Ms. Burkle] to choose yet another Court to hear her case was unsupportable and caused the costs of the

---

[5] Ms. Burkle also asserts the stipulation by its terms excluded "post-judgment enforcement and modification proceedings." As indicated in part A.1., *ante,* the civil action was obviously not a postjudgment enforcement or modification proceeding, as no judgment has been entered except the bifurcated judgment of dissolution.

litigation to greatly increase." He also observed Ms. Burkle's assertion that she did not bring her claim before Judge Lachs because it was a "post-judgment enforcement matter" was "not accurate," and that Ms. Burkle herself had an OSC (order to show cause) for support pending before him. Under these circumstances, Judge Lachs did not abuse his discretion in concluding Ms. Burkle's contentions regarding the proper forum for her action to collect support were frivolous and justified sanctions against both her and her attorneys. (See *Eichenbaum v. Alon* (2003) 106 Cal.App.4th 967, 976–977 [131 Cal.Rptr.2d 296] [affirming award of sanctions against party and attorneys under § 128.7 for presenting an improper amended complaint; violations of § 128.7, subd. (b) included the "frivolousness of any claim against a deceased individual" as well as the misleading nature of allegations in the complaint].)

 Finally, Ms. Burkle complains Mr. Burkle was required to file an income and expense declaration and a property declaration in order to obtain attorney fees, citing rule 5.128 of the California Rules of Court.[6] We agree with Judge Lachs that filing an income and expense declaration was not a jurisdictional requirement for an award of fees under section 271, which "is in the nature of a sanction." (Fam. Code, § 271, subd. (a).) While the court must take into consideration all evidence concerning the parties' incomes, assets and liabilities, the only stricture imposed by section 271 is that the sanction may not impose "an unreasonable financial burden" on the party sanctioned. The party requesting the award "is not required to demonstrate any financial need for the award." (*Id.*, subd. (a).) Ms. Burkle does not contend, nor could she, that the $32,950 sanctions award imposed an unreasonable financial burden on her, and she filed no declaration herself. Accordingly, it is difficult to discern any purpose for requiring Mr. Burkle to file a declaration, or any justification for finding the requirement jurisdictional. Any error in not requiring a financial declaration was harmless. (See *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 524 [11 Cal.Rptr.3d 671] [although a rule of court phrased in mandatory language is generally binding on the courts, departure from the rule is not reversible error unless prejudice is shown].)[7]

---

[6] California Rules of Court rule 5.128(a) states that a current income and expense declaration and a current property declaration must be served and filed by any party "appearing at any hearing at which the court is to determine an issue as to which such declarations would be relevant." Rule 5.128(b) further provides that when attorney fees are requested by either party, specified sections of the income and expense declaration must be fully completed. (*Id.*, rule 5.128(b).)

[7] Ms. Burkle makes two other claims equally without merit. She says no evidence supported an award of attorney fees under Family Code section 271. That is incorrect. She filed a separate civil action which was bound to be dismissed and her conduct in doing so necessarily caused litigation costs to increase and therefore patently "frustrates the policy of the law to promote settlement . . . and . . . to reduce the cost of litigation by encouraging cooperation

## DISPOSITION

The judgment (B188224) and order (B188735) are affirmed. Respondents in both cases are entitled to recover their costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 21, 2007, S148697.

---

between the parties and attorneys." (Fam. Code, § 271, subd. (a).) Ms. Burkle also contends sanctions under Family Code section 271 may only be imposed on a party, not on the attorneys. Although she is correct, Judge Lachs's order did not purport to sanction Ms. Burkle's attorneys under Family Code section 271.