Filed 1/20/15  Scarlatelli v. Gamut Construction CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| MARK SCARLATELLI et al., | B252435 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. KC066075) |
| v. | |
| GAMUT CONSTRUCTION COMPANY INC. et al., | |
| Defendants and Respondents; | |
| MILLER MILLER MENTHE LLP, | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dan Thomas Oki, Judge.  Reversed and remanded.

Miller Miller Menthe, Darrel C. Menthe and Adam I. Miller for Plaintiffs and Appellants and Objector and Appellant Miller Miller Menthe.

Dagrella Law Firm and Jerry R. Dagrella for Defendants and Respondents.

_____

During the pendency of marital dissolution proceedings between appellant Mark Scarlatelli and his former wife, Mischelynn Scarlatelli, in family law court, Mark filed multiple lawsuits against Mischelynn, her parents, and her parents' trust (collectively, "Respondents") in civil court.[1] Each of the civil actions filed by Mark alleged claims arising out of a dispute over the ownership of certain real property and costs incurred in constructing a residence on the property. In this action, the trial court granted a motion for sanctions brought by Respondents under Code of Civil Procedure[2] section 128.7, awarded monetary sanctions against both Mark and his counsel, appellant Miller Miller Menthe LLP, and ordered the dismissal of the action with prejudice. On appeal, Mark and his counsel argue that the trial court erred in finding that the family law court had exclusive jurisdiction over the subject matter of the action and in ordering sanctions against them. For the reasons set forth below, we reverse the judgment of dismissal and remand the matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Parties

Mark and Mischelynn were married in 1994. Mischelynn's parents are Troy and Shirley Isom,[3] who were the trustees of a living trust known as the Armie Troy and Shirley Isom Family Trust (the "Trust"). As alleged by Mark, the Scarlatellis and the Isoms were in the business of building and refurbishing homes and then reselling the homes for profit. Mark and Mischelynn each hold a 50 percent ownership interest in a construction business, Gamut Construction Company, Inc. ("Gamut"). Mark and Troy Isom were the joint owners of a related real estate business, Bella Piazza LLC ("Bella").

---

[1] For clarity and convenience, and not out of disrespect, we shall refer to Mark and Mischelynn Scarlatelli by their first names.

[2] Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.

[3] On January 7, 2015, shortly before the cause was submitted, Respondents' counsel notified this court of the deaths of both Troy and Shirley Isom.

On December 4, 2009, Mischelynn filed a petition for dissolution of marriage. The family law court later entered a judgment of dissolution and reserved jurisdiction over property division issues. At all relevant times, the dissolution proceedings between Mark and Mischelynn remained pending before the family law court (the "Family Law Case"; Case No. KD077685). During the pendency of those proceedings, Mark filed five separate lawsuits against Mischelynn and/or the Isoms in civil court.

## II.    The First Gamut Suit and The First Bella Suit

On April 25, 2012, Mark filed his first civil action on behalf of Gamut against the Isoms (the "First Gamut Suit"; Case No. KC063680). The complaint pleaded causes of action for (1) money had and received, (2) conversion, (3) trespass to chattels, and (4) unjust enrichment, and arose out of a dispute over real property located at 328 Saddlehorn Ranch in La Verne, California ("328 Saddlehorn Property"). The complaint specifically alleged that the Isoms held title to the 328 Saddlehorn Property, that Gamut constructed a residence on the property and advanced over $260,000 in construction costs, and that the Isoms refused to reimburse Gamut for those costs after the residence was built. It further alleged that, during construction of the residence, Mischelynn permitted Gamut to store construction equipment on other real property owned by the Isoms, and the Isoms later refused to allow Gamut to recover its equipment. The complaint sought recovery of the construction costs, other damages according to proof, equitable and injunctive relief, and attorney's fees and costs.

On October 3, 2012, Mark filed his first civil action on behalf of Bella against the Isoms (the "First Bella Suit"; Case No. KC064781). The complaint pleaded a single cause of action to quiet title in the 328 Saddlehorn Property. It alleged that the parties had an oral agreement under which Mark would build a residence on the property, and after the residence was built, the Isoms would transfer title in the property to Bella, a company jointly owned by Mark and the Isoms to fund and facilitate their property business. It further alleged that the Isoms refused to transfer title to Bella after the

3

residence was built. The complaint sought a declaratory judgment that Bella was the sole owner of the 328 Saddlehorn Property and costs of suit.

At the time the First Gamut Suit and the First Bella Suit were filed, Mark was represented by attorney Timothy Brown. On December 12, 2012, Darrel Menthe and Adam Miller of Miller Miller Menthe LLP (the "Miller Firm") substituted for Brown as the plaintiffs' attorney of record.

On March 7, 2013, the Isoms filed a notice of related case in both the First Gamut Suit and the First Bella Suit, seeking to have each case deemed related to the pending Family Law Case. The Isoms asserted that both Gamut and Bella were community assets, and that disputes relating to the identification and valuation of these assets were already the subject of discovery and trial in the dissolution proceedings. In oppositions filed on March 13, 2013, Mark argued that neither case belonged in family law court primarily because the Isoms were not parties to the dissolution proceedings and the resolution of the civil cases would not determine the ownership interests of Mark or Mischelynn in any property. On March 21, 2013, Los Angeles Superior Court Judge Dan Thomas Oki issued an order declining to deem the two civil cases related to each other or to the Family Law Case.

In April 2013, the Isoms served Mark with a section 128.7 motion for sanctions in both the First Gamut Suit and the First Bella Suit. In support of their motions, the Isoms contended that Mark lacked authority to sue on behalf of Gamut or Bella because he never obtained authorization to sue from a majority of the company's directors or members. The Isoms also claimed that there was no factual or legal merit to the causes of action alleged and that both cases had been filed for the purpose of harassing Mischelynn and her parents during the pending dissolution proceedings.

The Isoms ultimately did not file their motions for sanctions in either the First Gamut Suit or the First Bella Suit. Instead, in response to the sanctions motions, the Miller Firm filed a request to dismiss each case without prejudice. An order of dismissal without prejudice was accordingly entered in the First Gamut Suit on May 7, 2013, and in the First Bella Suit on May 22, 2013.

4

### III. The Second Gamut Suit[4]

On June 6, 2013, Mark, acting through the Miller Firm, filed a second civil action on behalf of Gamut (the "Second Gamut Suit"; Case No. KC066075). The Second Gamut Suit was brought as a derivative action, and named the Isoms, the Isom Family Trust, and Mischelynn as defendants. It alleged that Mark and Mischelynn each held a 50 percent interest in Gamut, and Mark and Troy Isom each held a 50 percent interest in Bella. The complaint pleaded causes of action for (1) quantum meruit against the Isoms and the Trust, (2) conversion against all defendants, (3) trespass to chattels against all defendants, and (4) breach of fiduciary duty against Mischelynn.

As alleged in the complaint, the parties had agreed that Gamut would construct a residence on the 328 Saddlehorn Property, which was owned by either the Isoms or the Trust, and after the construction was complete, title in the property would be transferred to Bella and Gamut would be repaid the balance of all costs incurred in the construction. In November 2011, after Gamut constructed the residence and advanced over $260,000 in construction costs, Mark requested that the title be transferred to Bella and that Gamut's costs be repaid, but the Isoms refused. It also was alleged that, during construction of the residence, Gamut placed its equipment on another property owned by either the Isoms or the Trust with the Isoms' consent. When Gamut's representatives attempted to regain possession of the equipment in November 2011, the Isoms refused access to the property and demanded the payment of storage fees. In addition, the complaint alleged that Mischelynn had entered into a civil conspiracy with the Isoms to prevent Gamut from recovering its equipment and construction costs, thereby breaching her fiduciary duty to Gamut. The complaint sought recovery of the construction costs, other damages according to proof, equitable and injunctive relief, and attorney's fees and costs.

---

**4**      The Second Gamut Suit is the subject of this appeal.

5

## IV. The Second Bella Suit

On the same day Mark filed the Second Gamut Suit, he filed a second civil action on behalf of Bella (the "Second Bella Suit"; Case No. KC066079). The Second Bella Suit was also filed as a derivative action and named the Isoms and the Trust as defendants. The complaint pleaded causes of action for (1) quiet title, (2) declaratory relief, and (3) breach of fiduciary duty. It similarly alleged that the Isoms had breached an oral agreement to transfer title in the 328 Saddlehorn Property to Bella once Gamut completed the construction of a residence on the property, and that Troy Isom had breached his fiduciary duty to Bella by refusing to transfer title to the company. The complaint sought a declaratory judgment that Bella was the sole owner of the 328 Saddlehorn Property, along with damages and costs according to proof.

## V. The Individual Suit

In addition to the Second Gamut Suit and the Second Bella Suit, Mark filed a third civil action against the Isoms on June 6, 2013 (the "Individual Suit"; Case No. KC066078). The Individual Suit was filed on Mark's own behalf and named the Isoms, the Trust, and Mischelynn as defendants. The complaint pleaded causes of action for (1) quiet title, (2) declaratory relief, (3) conversion, and (4) restitution, and concerned a different property located at 339 Saddlehorn Lane in La Verne, California ("339 Saddlehorn Property"). The complaint alleged that the parties had agreed that Mark and Mischelynn would purchase and construct a family residence for themselves on the 339 Saddlehorn Property, which was owned by either the Isoms or the Trust. It also alleged that Mark and Mischelynn had paid the Isoms over $200,000 for the property and spent an additional large sum of money constructing the residence, but due to the dissolution proceedings, Mischelynn and the Isoms conspired to hide the property in the Isoms' name by refusing to transfer title. The complaint sought a declaratory judgment that Mark held a 50 percent ownership interest in the 339 Saddlehorn Property, along with restitutionary relief, punitive damages, and costs of suit.

6

## VI.   Respondents' Motions for Sanctions Under Section 128.7

On July 19, 2013, more than 21 days after service, Respondents filed three separate motions for sanctions in the Second Gamut Suit, the Second Bella Suit, and the Individual Suit, each on the grounds that the action was brought without legal or factual merit and primarily for the purpose of harassing Mischelynn and the Isoms in the pending Family Law Case. As to each motion, Respondents sought sanctions against both Mark and the Miller Firm, consisting of approximately $9,000 in attorney's fees and costs and dismissal of the action with prejudice.

In the motion for sanctions filed in the Second Gamut Suit, Respondents raised several arguments. In addition to identifying certain pleading defects in the complaint, they contended that the family law court had exclusive jurisdiction over the causes of action alleged against Mischelynn because such claims pertained to the assets of Gamut, which was a community property business that was already the subject of litigation in the pending Family Law Case. Respondents argued that the causes of action brought against the Isoms as individuals failed as a matter of law because the Isoms were not the owners of the property in dispute and could only be sued in their capacity as trustees. They further asserted that the claims against the Trust lacked factual support because Gamut's discovery responses established that Gamut had invoiced Bella for all of its construction services on the property rather than the Isoms or the Trust.

The motion was supported by declarations from the Isoms, Mischelynn, and their attorney in the civil cases. The Isoms stated in their declarations that they did not own the property where Gamut's construction equipment was stored and that the property was owned by the Trust. They also stated that a judgment creditor had placed a lien on the equipment after it was abandoned by Mark, and that Mischelynn had consented to storing the equipment on the property until the creditor foreclosed on it or the family law court determined the division of community assets. The Isoms denied ever entering into a

7

contract to pay Gamut for construction services or receiving any direct benefit from any services rendered by Gamut.[5]

In her supporting declaration, Mischelynn stated that the Family Law Case was in the discovery stage. She further asserted that all of the claims and allegations made against her in the civil cases involved issues that were already being litigated in the Family Law Case, including the claimed ownership of the two Saddlehorn properties and alleged breaches of the fiduciary duty owed to Gamut. Mischelynn stated her opinion that Mark had brought each civil case in retaliation for her attempts to increase his spousal and child support obligations and to expose his misappropriation of community funds. She also accused Mark of seeking to hide assets from a legitimate judgment creditor, which had placed a lien on Gamut's assets, including its construction equipment.

Respondents' attorney, Jerry Dagrella, submitted a declaration that attached copies of invoices produced by Gamut in discovery. According to Dagrella, Gamut produced the invoices in response to requests for discovery to support its claim that the Isoms owed Gamut over $260,000 in construction costs. The invoices reflected that Bella was billed for the construction costs rather than the Isoms or the Trust.

## VII.    Mark's Opposition to the Motions for Sanctions

On August 6, 2013, Mark filed oppositions to the motions for sanctions in each of the civil cases. In the opposition filed in the Second Gamut Suit, Mark argued that he and his counsel did not bring any of the civil actions for an improper purpose, but rather were acting based on a good faith belief in the merits of the claims and likelihood of recovery. With respect to the claims alleged against Mischelynn, Mark asserted that the

---

[5]      In declarations submitted in support of their motions for sanctions in the First and Second Bella Suits, the Isoms described their ownership interest in the 328 Saddlehorn Property. The Isoms stated that they purchased the property in their names in 1977, transferred title in the property to the Trust in 2005, and never agreed to transfer any interest in the property to Bella. Their declarations attached a copy of a grant deed showing the transfer of their ownership interest in the 328 Saddlehorn Property to the Isoms' revocable living trust.

8

claims were not subject to the family law court's exclusive jurisdiction because they did not concern the division of a community asset, but instead related to Mischelynn's civil conspiracy with her parents to prevent Gamut from recovering its equipment and costs. With respect to the claims alleged against the Isoms and the Trust, Mark contended that they were proper parties in the action because the Isoms were closely intertwined with the operation of the property owned by the Trust and directly benefited from the construction services performed on the property without paying Gamut for those services. Mark also reasoned that many of Respondents' remaining arguments in support of their sanctions motion concerned alleged defects in pleading, which were more appropriately raised in a demurrer and could be cured by Mark in an amended complaint.

In a declaration submitted in support of his opposition, Mark stated that he did not bring the Second Gamut Suit for an improper purpose, but rather to redress the wrongs committed against Gamut by Mischelynn and her parents. Mark denied that he had attempted to hide any assets of Gamut as claimed by Mischelynn, and stated that he was trying to preserve the company's assets so that they could be used to pay the judgment creditor. Mark asserted that there were numerous checks, invoices, and other financial documents which supported his claims in the action and that additional supporting evidence would be provided by Mischelynn and the Isoms in the course of discovery. The declaration included copies of invoices to Gamut for certain construction materials that it had purchased for the 328 Saddlehorn Property.

The opposition also was supported by a declaration from Mark's attorney, Adam Miller. Miller stated that, prior to filing the civil actions on Mark's behalf, his firm investigated the allegations and formed the opinion that the claims had merit and were not being brought for an improper purpose. Miller also explained that his firm made a strategic decision to dismiss the First Gamut Suit and the First Bella Suit and to re-file the cases as derivative suits because Respondents contended that Mark lacked authority to sue directly on the company's behalf and Miller did not want that issue to detract from the merits of the claims. Miller further stated that, after receiving the sanctions motion in the Second Gamut Suit, he attempted to meet and confer with Respondents' counsel to

9

address many of the issues raised in the motion. In addition to offering to amend the complaint to cure certain pleading defects, Miller proposed an agreement under which the Isoms would be dismissed from the action if they provided a declaration stating that only the Trust had an interest in the property at issue and stipulated to waiving any statute of limitations defense if such representation was found to be untrue. Miller also proposed an agreement to either consolidate the three civil cases or combine discovery efforts in the cases to alleviate any concern about multiple litigations. According to Miller, Respondents' counsel never responded to any of these proposals or otherwise stipulated to the filing of an amended complaint.

## VIII. Ruling on Motions for Sanctions in the Second Bella Suit and Individual Suit

All three civil cases filed on June 6, 2013 originally were assigned to Los Angeles Superior Court Judge R. Bruce Minto. On August 19, 2013, Judge Minto held a hearing on the motions for sanctions brought by Respondents in each case. Judge Minto denied the motion for sanctions in the Second Bella Suit on the grounds that "[t]he subject matter of the complaint . . . is not exclusively within the jurisdiction of the Family Law Court," and the Isoms "have not established that the entire complaint or any of its causes of action are frivolous or were brought for an improper purpose." However, he granted the motion for sanctions in the Individual Suit and awarded monetary sanctions against Mark based on a finding that "the subject matter of that action, the ownership of the property and residence at 339 Saddlehorn [Lane], is exclusively within the jurisdiction of the Family Law Court." Because Judge Oki had heard the First Gamut Suit, Judge Minto declined to rule on the motion for sanctions in the Second Gamut Suit and instead assigned the motion to Judge Oki for a ruling on the merits.

## IX. Ruling on Motion for Sanctions in the Second Gamut Suit

On October 1, 2013, Judge Oki granted the motion for sanctions in the Second Gamut Suit. In his written order, Judge Oki noted that the Second Gamut Suit raised "the same claims and allegations as the previous lawsuits that [were] dismissed," and that Mark had "apparently attempted to split his claims into three more separate lawsuits,

10

needlessly increasing the cost of litigation." With respect to the specific causes of action alleged against Mischelynn, Judge Oki found that Gamut was community property and was at issue in the pending Family Law Case over which the family law court had exclusive jurisdiction. With respect to the causes of action alleged against the Isoms, Judge Oki found that the Isoms previously had submitted declarations disclaiming their individual ownership of the property at issue, and that Mark had offered no evidence or argument apart from pure speculation to show how the Isoms could be liable in their individual capacities. With respect to the causes of action alleged against the Trust, Judge Oki noted that it had been disclosed in discovery that Gamut performed the construction services on the property solely for Bella, and that Mark provided no explanation as to why the claims against the Trust were proper or why the Trust could not be joined in the Family Law Case.

Judge Oki concluded that Mark brought the Second Gamut Suit against his former wife and in-laws for the improper purpose of harassing them or causing unnecessary delay or increase in the cost of litigation. Judge Oki ordered that the complaint in the Second Gamut Suit be stricken and the action be dismissed with prejudice to allow the claims to be adjudicated in the Family Law Case. Judge Oki also ordered monetary sanctions against both Mark and the Miller Firm in the amount of $9,120 pursuant to section 128.7. On November 5, 2013, following entry of a judgment of dismissal in the Second Gamut Suit, Mark filed a timely notice of appeal.[6]

## DISCUSSION

On appeal, Mark and the Miller Firm challenge the order granting the motion for sanctions in the Second Gamut Suit. They argue that the trial court erred in finding that the family law court had exclusive jurisdiction over the subject matter of the action

---

[6]     Prior to oral argument, we requested that the parties submit supplemental briefs addressing whether a trial court has authority under section 128.7 to dismiss an action with prejudice as a sanction, and if so, what findings are required to support an order of terminating sanctions. Both parties have submitted supplemental briefs.

11

because neither the Isoms nor the Trust was subject to mandatory joinder in the Family Law Case. They also assert that, even if the family law court had exclusive jurisdiction over the action, the trial court abused its discretion in ordering monetary and terminating sanctions because it was not objectively unreasonable to bring the action in civil court.[7]

## I. Legal Principles Governing Sanctions Under Section 128.7

Section 128.7 "authorizes trial courts to impose sanctions to check abuses in the filing of pleadings, petitions, written notices of motions or similar papers." (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 514.) Subdivision (b) of the statute states, in pertinent part, that "[b]y presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law. . . . [¶] (3) The allegations and other factual contentions have evidentiary support. . . ." (§ 128.7, subd. (b).) Subdivision (c) states that "[i]f, after notice and a

---

[7] In support of their arguments on appeal, Appellants request that we take judicial notice of the following documents: (1) Mischelynn's April 3, 2014 responsive declaration to a motion for joinder filed by Mark in the Family Law Case; (2) the reporter's transcript of the April 17, 2014 hearing on Mark's motion for joinder in the Family Law Case; (3) the family law court's April 17, 2014 minute order granting Mark's motion for joinder in the Family Law Case; (4) the reporter's transcript of the December 4, 2013 hearing in the Second Bella Suit and the Individual Suit; and (5) three notices of a pending lien sale from the Department of Motor Vehicles dated January 10, 2014. We decline to take judicial notice of these documents. Each concerns events that occurred after the trial court's ruling on the motion for sanctions in the Second Gamut Suit. Appellants have not shown exceptional circumstances justifying judicial notice of documents that were not part of the record when the judgment was entered, and our review shows that none of the documents is ultimately relevant to the dispositive issues on appeal. (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194; *California School Bds. Assn. v. State of California* (2011) 192 Cal.App.4th 770, 803.)

reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." (§ 128.7, subd. (c).) Sanctions may include "directives of a nonmonetary nature" and "payment to the movant of . . . the reasonable attorney's fees and other expenses incurred as a direct result of the violation." (§ 128.7, subd. (d).)

Section 128.7 further provides that "[a] sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." (§ 128.7, subd. (d).) The Legislature accordingly designed the statute "to be remedial, not punitive." (*Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 591.) "While section 128.7 does allow for reimbursement of expenses, including attorney fees, its primary purpose is to deter filing abuses, not to compensate those affected by them." (*Musaelian v. Adams*, *supra*, 45 Cal.4th at p. 519; see also *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 699 ["'[s]anctions under section 128.7 are not designed to be punitive in nature but rather to promote compliance with statutory standards of conduct'"].)

"A trial court is to apply an objective standard in making its inquiry concerning the attorney's or party's allegedly sanctionable behavior in connection with a motion for sanctions brought under section 128.7. [Citations.]" (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921.) To obtain sanctions based on the filing of a legally or factually frivolous claim, "the moving party must show the party's conduct in asserting the claim was objectively unreasonable." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440.) For purposes of section 128.7, "[a] claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' [Citation.]" (*Peake v. Underwood*, *supra*, at p. 440; see also *Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 168 [even where a party's filing "lacks persuasive force," the trial court may not award sanctions under 128.7 if the filing "was not frivolous"].)

"A court has broad discretion to impose sanctions if the moving party satisfies the elements of the sanctions statute. [Citation.] However, the sanctions statute '"must not

be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously. Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way. Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution.'" [Citation.]" (*Peake v. Underwood*, *supra*, 227 Cal.App.4th at p. 441.) The trial court's award of sanctions under section 128.7 is reviewed on appeal for an abuse of discretion. (*Ibid.*; *Guillemin v. Stein*, *supra*, 104 Cal.App.4th at p. 167.)

## II. The Trial Court Erred in Ordering Sanctions Under Section 128.7

In granting the motion for sanctions in the Second Gamut Suit, the trial court awarded monetary sanctions against both Mark and the Miller Firm and ordered the dismissal of the action with prejudice based on findings that Mark had filed the Second Gamut Suit against his former wife and in-laws for the purpose of harassing them or causing unnecessary delay or needless increase in the cost of litigation. Considering the procedural posture of the case and the record before us, we conclude that the trial court abused its discretion in ordering sanctions under section 128.7.

In its sanctions order, the trial court noted that Mark had "now filed five separate lawsuits against Mischelynn, her parents, and her parent's trust," and that the three later-filed suits "rais[ed] the same claims and allegations as the previous lawsuits that he dismissed." With respect to the specific causes of action alleged against Mischelynn in the Second Gamut Suit, the trial court found that Mark brought those claims for an improper purpose because Gamut was community property jointly owned by Mark and Mischelynn and was the subject of pending litigation in the earlier-filed Family Law Case. With respect to the causes of action alleged against the Isoms and the Trust, the trial court found that Mark also acted with an improper motive because the Isoms had disclaimed their individual ownership of the real property at issue, and neither the Isoms nor the Trust was directly billed for the construction services performed by Gamut on that property. The trial court did not make any specific findings concerning the conduct of the Miller Firm in ordering sanctions against them, other than to note that Mark's

14

opposition did not provide any explanation as to why the Isoms or the Trust could not be joined as parties in the pending Family Law Case.

When considered as a whole, the sanctions order reflects the trial court primarily was concerned about the number of lawsuits that had been brought against Mischelynn and her parents and the procedural manner in which the lawsuits were filed. In particular, the trial court found an improper motive in the decision to "split" the claims into separate lawsuits, to sue the Isoms in both their individual and representative capacities, and to file the cases in civil rather than family law court. However, there is nothing in the record to support a finding that those strategic decisions about how and where to file the lawsuits were made by Mark rather than by his attorneys. To the contrary, the record reflects that the Miller Firm made the decision to bring the Second Gamut Suit as a separate civil action, and further demonstrates that it was not objectively unreasonably to do so.

In opposing the motion for sanctions, Mark's attorney, Adam Miller, stated in a sworn declaration that he decided to dismiss the First Gamut Suit and the First Bella Suit without prejudice and to re-file the two cases as derivative suits. Miller explained that Respondents had taken the position that Mark lacked the authority to sue directly on each company's behalf, and that he made a strategic decision to dismiss and re-file the cases as derivative actions so that the issue of corporate authority would not detract from the substantive merits of the claims. Respondents note that they raised the lack of corporate authority as an affirmative defense in their answer in the First Gamut Suit, and Mark's attorneys did not dismiss that action until they were served with a motion for sanctions shortly before trial. However, the purpose of section 128.7's safe harbor provision is to provide a party with an opportunity to withdraw or correct a challenged pleading, which the Miller Firm did when they dismissed and then re-filed the action as a derivative suit. (*Banks v. Hathaway, Perrett, Webster, Powers & Chrisman* (2002) 97 Cal.App.4th 949, 955 ["[t]he purpose of section 128.7 . . . is to give the offending party the opportunity to withdraw or otherwise correct the pleading"]; *Martorana v. Marlin & Saltzman*, *supra*, 175 Cal.App.4th at p. 699 [section 128.7 "'permits a party to withdraw a questionable pleading without penalty, thus saving the court and the parties time and money litigating

the pleading'"].)  While Respondents contend that the First Gamut Suit easily could have been converted into a derivative action by filing an amended complaint, the Miller Firm reasonably could have decided that the safer course was to bring a new action given that amending the pleadings shortly before trial was not a matter of right and would have required leave of court.  On this record, we cannot say that the Miller Firm's decision to dismiss the First Gamut Suit during the safe harbor period and to file a new derivative suit was objectively unreasonable or intended for an improper purpose.[8]

The record also reflects that the Miller Firm had an objectively reasonable basis for filing the Second Gamut Suit as a separate action in civil court.  Judge Oki previously had issued an order declining to deem the First Gamut Suit and the First Bella Suit related to each other, or to the earlier-filed Family Law Case.  Notably, the Isoms had sought to have each of those cases deemed related on the grounds that both Gamut and Bella were community assets, and the claims alleged in the First Gamut and First Bella Suits were "already the subject of discovery and trial in the family court proceedings."  Mark opposed the request on the basis that the Isoms were not parties to the Family Law Case, and the resolution of the civil cases would not determine the ownership interests of Mark or Mischelynn in any property.  While Judge Oki's order did not set forth his reasons for declining to deem the cases related, it was not unreasonable for the Miller Firm to rely on that order in deciding to file the Second Gamut Suit separately from the Second Bella Suit and to file both cases in civil rather than family law court.

Respondents argue that Judge Oki's prior order did not provide a reasonable basis for concluding that the claims belonged in civil court because Mischelynn was not named as a party in the First Gamut or First Bella Suit.  They reason that, once Mark and his

---

[8]     Respondents claim that they served the Miller Firm with a prior motion for sanctions in the First Gamut Suit which challenged Mark's authority to sue, and that the Miller Firm chose to ignore the motion and allow the safe harbor period to lapse without taking any action.  However, the record on appeal does not include a copy of that motion, and assuming it was properly served, Respondents fail to explain why they never filed the motion with the trial court after expiration of the safe harbor period.

16

attorneys made the decision to add Mischelynn as a defendant in the Second Gamut Suit, they knew or should have known that the claims now belonged in family law court. However, as Respondents acknowledge, the two Gamut Suits and the two Bella Suits each arose out of the same alleged transaction—the transfer of the 328 Saddlehorn Property to Bella in exchange for Gamut's construction of a residence on the property. Although the Second Gamut Suit added Mischelynn as a defendant for her alleged role in preventing Gamut from recovering its assets, the complaints in both the First Gamut Suit and the Second Gamut Suit rested on the same general set of facts and involved the same injury. In light of Judge Oki's order expressly declining to deem the First Gamut Suit related to the Family Law Case, a reasonable attorney in Miller's position could have concluded that it was at least permissible to bring the Second Gamut Suit in civil court.

Respondents also assert that sanctions against both Mark and his attorneys were proper because they knew the claims alleged against Mischelynn in the Second Gamut Suit were already being litigated in the Family Law Case. In support of this argument, they point to the declaration submitted by Mischelynn in which she stated that, based on her personal review of the complaints filed in the civil suits, "[a]ll of the claims and allegations raised in the [c]omplaints that relate to [her] involve issues that have already been raised by Mark in the family court and are presently being litigated in the family court." However, while Mischelynn may have been a party in the Family Law Case, she was not competent to testify as to whether the causes of action pleaded in Mark's civil complaints were subject to adjudication in the family law court. That was a legal conclusion to be made by the trial court after a careful review of the claims and issues being litigated in the Family Law Case. Such a determination could not be made on the basis of Mischelynn's unsupported declaration. Nor could it be made merely by reviewing the complaint filed in the Second Gamut Suit, which, on its face, did not concern the characterization or division of community assets over which the family law court had exclusive jurisdiction. Although it is true that Gamut and Bella were family-owned business in which Mark and Mischelynn held a community property interest, the Second Gamut Suit was not a dispute over the ownership or division of either company.

17

Instead, it was a dispute over alleged construction costs and equipment that Mark was seeking to recover on behalf of Gamut from either the Isoms or the Trust. To the extent that the trial court was concerned that the same claims were being litigated in family law court, one proper remedy would have been to stay the civil action pending resolution of the Family Law Case. Dismissal of the entire action with prejudice as a sanction for bringing potentially duplicative claims was not warranted at this stage in the civil proceedings.

The cases on which Respondents rely do not compel a different conclusion. Those cases support the general proposition that California law "preclude[s] a party to a pending marital dissolution proceeding from bringing a civil action against the other spouse over matters of which the family law court has jurisdiction." (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 399-400; see also *Neal v. Superior Court* (2001) 90 Cal.App.4th 22; *Glade v. Glade* (1995) 38 Cal.App.4th 1441; *Askew v. Askew* (1994) 22 Cal.App.4th 942.) In each of the cited cases, a spouse in a pending dissolution proceeding was sued in civil court for either failing to comply with a family law order, or failing to return property over which there was a dispute in family law court about its proper value or characterization. (*Burkle v. Burkle*, *supra*, at p. 395 [wife sued husband for violating interim family law order]; *Neal v. Superior Court*, *supra*, at p. 26 [husband sued wife for non-compliance with family law judgment and misrepresentations at family law hearing]; *Glade v. Glade*, *supra*, at p. 1455 [husband's parents sued wife to foreclose on community property residence]; *Askew v. Askew*, *supra*, at p. 962 [husband sued wife for refusing to return property in which wife claimed community interest].) In this case, Mischelynn was being sued for allegedly interfering with Mark's attempts to recover money and property belonging to their indisputably jointly-owned community business. Although the family law court arguably could have exclusive jurisdiction over the claims against Mischelynn, any duplication in the claims alleged could not be determined on the face of the pleadings.

In ordering sanctions under section 128.7, the trial court also found that Mark had acted with an improper motive in suing the Isoms and the Trust because the causes of

18

action alleged against them lacked merit. In particular, the court found that the Isoms should not have been sued in their individual capacities because they were not the legal owners of the 328 Saddlehorn Property, and should not have been sued in their capacity as trustees because neither the Isoms nor the Trust were billed for the construction of the residence on the property. The only evidence before the trial court regarding these issues were the Isoms' declarations indicating that they had transferred their ownership interest in the properties involved to their revocable living trust, and discovery responses showing that Bella was invoiced for services performed by Gamut on the Saddlehorn Property. However, the Isoms did not deny that Gamut built a residence and placed its equipment on properties that they controlled and had the power to convey through their living trust, nor did they deny that Troy Isom was the co-owner of Bella, a company that Mark alleged was used to fund and facilitate the parties' joint real estate business.

"Under California law, a revocable inter vivos trust is recognized as simply 'a probate avoidance device, [and] does not prevent creditors of the settlors – who are often also the trustees and the sole beneficiaries during their lifetimes – from reaching trust property.' [Citation.]" (*Zanelli v. McGrath* (2008) 166 Cal.App.4th 615, 633.) Thus, "[p]roperty transferred to, or held in, a revocable inter vivos trust is nonetheless deemed the property of the settlor," and "the settlor . . . '"has the equivalent of full ownership of the property."'" (*Ibid.*; see *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1349-1350 [action for specific performance to compel settlors/trustees to convey title to real property held in revocable living trust was not fatally defective for naming them in their individual capacities rather than their representative capacity as trustees].) Additionally, while mere control over a trust is not sufficient to subject a trustee to individual liability, a trustee may be "personally liable . . . for any obligation arising from ownership or control of trust property" if he or she "*intentionally or negligently* acted or failed to act in a manner that establishes personal fault." (*Haskett v. Villas at Desert Falls* (2001) 90 Cal.App.4th 864, 877-878; see Prob. Code, §§ 18001, 18002.) The gravamen of Mark's complaint against the Isoms was that they breached an agreement to transfer title to real property held by the Trust to Bella, and willfully withheld money and property belonging to

19

Gamut as a result of the pending dissolution proceedings. While Respondents dispute the truth of these allegations, the decision to name the Isoms as defendants in both their individual and representative capacities was not objectively unreasonable, nor did it demonstrate that the Isoms were being sued primarily for an improper purpose.[9]

As the Court of Appeal observed in *Peake v. Underwood*, "when determining whether sanctions should be imposed, the issue is not merely whether the party would prevail on the underlying factual or legal argument. Instead, courts should apply an objective test of reasonableness, including whether 'any reasonable attorney would agree that [the claim] is totally and completely without merit.' [Citations.] Thus, the fact that a plaintiff fails to provide a sufficient showing to overcome a demurrer or to survive summary judgment is not, in itself, enough to warrant the imposition of sanctions. [Citations.]" (*Peake v. Underwood*, *supra*, 227 Cal.App.4th at p. 448.) Moreover, even where a violation of section 128.7 is established, "sanctions should be 'made with restraint,'" and "'limited to what is sufficient to deter repetition of [the improper] conduct or comparable conduct by others similarly situated.'" (*Id.* at pp. 441, 448.) Although terminating sanctions are not prohibited under section 128.7, or the equivalent Federal Rule of Civil Procedure, rule 11 (28 U.S.C.), the dismissal of an action with prejudice is a severe sanction, and generally is only warranted in exceptional circumstances, such as fraud on the court, after an independent determination on the merits of the claims alleged. (See, e.g., *Jimenez v. Madison Area Tech. College* (7th Cir.) 321 F.3d 652, 658; *Peerless*

---

**9** Respondents contend that the causes of action alleged against the Isoms and the Trust in the Second Gamut Suit also lacked merit because they were barred by the statute of limitations, Mark failed to establish a credible claim for damages, Mischelynn did not consent to the actions taken by Mark on Gamut's behalf, and the complaint did not plead compliance with the statutory prerequisites for bringing a derivative suit. However, the trial court did not address any of these arguments in ruling on the motion for sanctions, nor did it make any finding that the claims alleged were legally or factually frivolous based on any of these grounds. Under such circumstances, we need not address these arguments in reviewing the propriety of the trial court's order other than to note they would have been more appropriately raised in a demurrer or motion for summary judgment rather than a motion for sanctions under section 128.7.

20

*Industrial Paint Coatings Co. v. Canam Steel Corp.* (8th Cir. 1992) 979 F.2d 685, 687; *Combs v. Rockwell Int'l Corp.* (9th Cir. 1991) 927 F.2d 486, 488.)

In this case, we express no opinion as to whether Mark could prevail on the merits of his claims in the Second Gamut Suit at trial, or whether Respondents could succeed in obtaining a dismissal of the action through a motion for summary judgment or other determination on the merits. The only motion brought by Respondents was a motion for sanctions under section 128.7, which required a specific showing that Appellants filed the Second Gamut Suit primarily for an improper purpose, or brought claims that were so devoid of merit as to be legally or factually frivolous. Based on the totality of the record before us, we conclude that the decision to file the Second Gamut Suit as a separate derivative action and to name the Isoms in their capacity as both individuals and trustees was not objectively unreasonable, nor did it support a finding that Mark or his attorneys acted with an improper motive in filing suit. Under these circumstances, the trial court abused its discretion in granting Respondents' motion for sanctions in the Second Gamut Suit, and in ordering monetary and terminating sanctions under section 128.7.

## DISPOSITION

The judgment of dismissal is reversed and the matter is remanded to the trial court with directions to vacate its October 1, 2013 order for monetary and terminating sanctions and to enter a new order denying Respondents' motion for sanctions under section 128.7. Appellants shall recover their costs on appeal.

ZELON, J.

We concur:

PERLUSS, P. J.

WOODS, J.

21