Filed 12/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANNAQUITE FEATHERSTONE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>BRIAN MARTINEZ,<br><br>Defendant and Respondent;<br><br>CRYSTAL HILL,<br><br>Objector and Appellant. | B316280<br><br>(Los Angeles County Super. Ct. No. 19WHPT00603) |

APPEAL from an order of the Superior Court of Los Angeles County, James E. Horan, Judge. Reversed.

Decker Law and James D. Decker for Plaintiff and Appellant and Objector and Appellant.

No appearance for Defendant and Respondent.

This is an appeal from a family court's self-described sua sponte sanctions order under Family Code section 271.[1] The family court judge ordered appellants Annaquite Featherstone (Mother) and her attorney, Crystal Hill (Hill), to each pay $10,000 to respondent Brian Martinez (Father) and partly justified the sanctions on its finding that appellants unjustifiably accused the judge of being biased (or appearing to be biased). We consider whether the sanctions order represents an abuse of the family court's discretion.

## I. BACKGROUND

### A. *Case History*

#### 1. *The petition*

Mother and Father had a child (Minor) together in 2019. Approximately two months after Minor was born, Mother filed a parentage petition requesting primary physical and joint legal custody of Minor. In her supporting declaration, Mother represented Father traveled a lot for work and was usually in town only three to four days every month. Mother acknowledged Father had been heavily involved in caring for Minor and had visited Mother's house every day he was in town. Mother declared she wanted Father to visit Minor, but she wanted each visit to be preceded by two weeks' advance notice, to last only three to four hours, and to take place at Mother's home until Minor was six months old.

Father filed a response with his proposed visitation schedule, and Mother filed a second declaration. Mother

---

[1] Undesignated statutory references that follow are to the Family Code.

2

expressed concerns with Father's proposal, particularly his requests that each visit with Minor last eight hours and that overnight visits commence when Minor was six months old. Mother proposed overnight visits be delayed until Minor was two years old.

### 2. *The first hearing*

The initial hearing in the case was held in December 2019. Mother was not represented by counsel at the time and asked for a continuance so she could obtain counsel. The family court granted the request but discussed visitation with the parties so it could make an initial interim visitation order.

Mother said she was very open to allowing Father to see Minor at any time. In response, the family court referred to the declaration Mother filed with her parentage petition and expressed concern with the manner in which she drafted it: "[T]he way you wrote it, it was along the lines of, I control everything, I'm the boss, and, you know, I'll do him a favor and let him see his child. [¶] That is not how it works. You are co-equal parents. Moms get the advantage because technically, literally, when a child is born, they are there, obviously. But then when it comes to court, they think, well, I'm the mom. I always win." Mother agreed Father had always been involved in Minor's life and the court then remarked, "So it's not a lack of familiarity. You should literally be at 50/50. Not, I let him see her whenever he wants. [¶] But he has a weird travel schedule." The court also asked Mother if she was breast-feeding—admonishing her "[d]on't . . . lie" and "[d]on't exaggerate"—before she answered. When Mother said she was not breast-feeding, the

3

court observed that this meant there were "no logistical problems" with visitation.

When Mother informed the court that, during mediation, she offered Father six hours of visitation "or whenever he's home[,]" the court asked Mother if she would like it if the roles were reversed and said: "I know how hard it is. You gave birth to the child. You held the child. You've taken care of this child. It's hard to conceptualize that he is every bit of the parent that you are, especially in this case because he's been there from birth." The court then said, "So here's the law: If everything is equal, you're supposed to be sharing 50/50. Not six hours. 50/50."

Father clarified he was only requesting for one weekend of visitation per month, with eight hours on Saturday and eight hours on Sunday. The court asked Mother if she thought that was unreasonable, and she replied that Minor was young and she wanted Father to get to know Minor. The court then made its ruling as follows: "I'm going to side completely with respondent today, and I think in the future you're going to have a really hard time, because although I've tried to explain it, emotionally—and I understand—you do not feel like he's an equal parent and you feel like you need to drag this out and make it slow."

### 3. *Mother's motion to disqualify the judge*

Mother retained Hill after this first hearing, and Hill filed a motion in March 2020 to disqualify the family court judge under Code of Civil Procedure section 170.1 because the judge exhibited bias against her at the earlier December hearing we just described. When the parties appeared in court before the hearing date on the motion to disqualify, Hill informed the family court that she had filed a motion for disqualification.

4

The family court judge stated the motion to disqualify him was "almost by definition untimely under these circumstances." Hill, however, represented that her office received the transcript for the earlier December hearing only earlier that same week and the delay in transcript preparation prevented pursuing the motion to disqualify more quickly. The judge stated he was advancing the motion to the hearing and striking it as untimely because, in his view, Mother should have filed the motion in December 2019 or January 2020 when she was aware of the asserted bias.

The family court also briefly addressed visitation issues during this same hearing. During the course of argument, the court stated Hill was not directly answering the court's questions and warned that, without improvement, they would "start talking about sanctions."

4.      *Proceedings in 2020 that are pertinent to the court's later award of sanctions*

Mother submitted a proposed judgment in July 2020. Father objected to the judgment and contended it did not reflect orders the court had made in several respects.[2] The family court rejected the proposed judgment.

---

[2]      Specifically, Father objected the proposed judgment: (1) did not specify the child custody and support orders were "Non-Montenegro"; (2) did not include the date on which Mother's "tie-breaking authority" would end; (3) misstated aspects of temporary visitation ordered by the court; (4) did not specify the parties would share joint legal custody; (5) misstated the child support amount by $70; (6) stated additional child support had been ordered when the court had not ordered additional support;

5

At a hearing in November 2020, the family court instructed the parties to share driving duties for physical custody exchanges and to record the exchanges so they would have evidence in case an issue arose. The court also made a record regarding the proceedings that had transpired in the case and expressed concern with, among other things, the initial declarations Mother filed earlier in the case.

### 5. *Proceedings in 2021, and the court's return to discussing sanctions*

In February 2021, Father filed a trial brief in which he requested Mother be ordered to pay $7,000 toward the cost of his attorney fees (that amounted to $24,851 by that point). He argued the requested fees had been incurred defending against Mother's unreasonable litigation, including: her motion to disqualify the family court judge, her proposed judgment that did not correctly reflect the orders the court had made, and her refusal to settle. A declaration accompanying Father's trial brief that included the request for sanctions averred the attorney fees request was made pursuant to the Family Code's sanctions statute—section 271, subdivision (a)—and further described what was characterized as Mother's unreasonable litigation behavior.

At a hearing on February 24, 2021, the family court again attempted to make a record of how the litigation had proceeded to that point. The court specifically emphasized Mother's early

---

and (7) included an incorrect child support calculation summary. Counsel for Mother would later explain that aspects of the support amounts in the proposed judgment were incorrect because of an inability to obtain information from Father.

6

declarations and her motion for disqualification as concerning. In reference to the latter, the court acknowledged it was "not so sure [it] should wade into" the issue because "[Mother] has the right to believe I was biased. She always has that right, and I can't sanction her for that." But the court observed "she does not have the right to file late, improperly noticed, and/or out of context motions."

The court opined both sides "seem to have come so far that I'm not sure sanctions are necessary" but the court said it would permit both sides to argue whether sanctions should be imposed. Mother argued Father had not properly noticed a motion for sanctions under section 271. The court responded and stated it believed the question of whether Father gave proper notice was irrelevant because it had done (or could do) the requisite noticing itself: "I think I noticed petitioner for sanctions on my own motion at one of the earlier hearings when things were not proceeding so well, and I have slid back against that amount. . . . [¶] But I did notice her. And counsel really doesn't have to do anything further. It's the court's own motion. It's a 271 sanction. The only thing I have to do is notice her."[3]

Father's counsel later filed a supplemental declaration regarding Father's request for attorney fees under section 271, describing actions Mother had—or had not—taken in the period spanning from March to June 2021, including continued disputes over holiday visitation. The declaration represented Father

---

[3]     During the same hearing, the court referred to Father's request for attorney fees as "redundant." The minute order for the hearing recites, "Both sides are noticed as to sanctions."

7

incurred $43,455 in attorney fees as of May 2021 and asked the court to order Mother to pay Father $10,000 toward these fees.

### 6. The court finds Mother's conduct is sanctionable

At a June 21, 2021, hearing, after discussing agreements reached on other issues, the parties began discussing their agreement that Father would have one video call per week with Minor. Father asked that the video call take place on any platform that allows video interaction between Father and Minor. Mother interjected that she agreed to use Zoom only because Zoom is recordable. The court asked why Mother wanted to record the calls, and Mother said she wanted the ability to record because in the past she and Father disagreed about whether Father made certain statements.

After further discussion regarding Mother's request, the court said, "[t]here has been, and I have been concerned, and we will touch on that later, that despite all the good things petitioner has to offer, there has been a tone of control in this case. It started with the very first pleading." Mother's counsel then said, "[w]e object to that statement as being biased. Once again we're going to renew our motion to move the matter from this courtroom."

The family court decided it would "temporarily move into a sanctions hearing" and described the history of the case. In doing so, the judge stated Mother's request to record Father's video calls with Minor was "offensive." The judge also stated Mother had a controlling mindset, which continued until at least March 5, 2020. He then said, "[b]ut here I sit just asking questions, making clear to both sides what my concerns are, and every time

8

I attempt to do so, I'm one, interrupted, and two accused." Later, the court said the case was close to resolution and it would have been a great opportunity for the court to give "just the tiniest sanctions" but "now sanctions are back, thoroughly back, on the table, and I am now accused of bias because I am concerned that your position might be a little overreaching and controlling."[4]

## B.    *The Sanctions Hearing*

The court held a hearing to impose sanctions in September 2021. At the outset, the court stated the parties were there "for sanctions which have been noticed, re-noticed, and repeatedly noticed." After hearing argument from both counsel, the court stated its intention to make a record and then issue sanctions. The court again delivered a lengthy recitation of its perceptions of the case, beginning with Mother's initial declarations.

According to the court, "[i]n a vacuum, [Mother's second] declaration was misleading, entitled, controlling, manipulative, and dismissive of any rights to meaningfully participate in co-parenting by [Father]." The court deemed the request "that the court prevent overnights for two years, while limiting [Father] to an approximately one-quarter or one-half of one percent timeshare for those two years" "in and of itself, sanctionable" but declared the court was "far to[o] experienced to have moved in that direction without giving [Mother] the time and space to become familiar with the law and the real-world practices of family court in California."

---

[4]    The minute order for the hearing states, "[t]he Court finds that petitioner and petitioner's counsel are subject to sanctions" and continued the issue of sanctions to the next court date.

9

Regarding the motion to disqualify the judge, the court stated the motion was untimely and procedurally deficient. It stated any facts supporting an alleged claim of bias were known to Mother in late December 2019. It also stated the substance of the motion "was written out of context in an intentionally inflammatory and dishonest manner." The court described its own rhetoric at the December 2019 hearing as an effort "to alert mothers to the law in the state of California, while repeatedly indicating empathy for the circumstances which bring litigants to such unwarranted and overreaching requests," and characterized the motion to disqualify as "altering the court's statements, removing the portions wherein the court repeatedly expressed empathy towards the petitioner, while presenting the now out-of-context, aggressive-sounding language as accurate and complete."

The court stated it declined to sign a judgment prepared by Mother in November 2020 "because it was replete with errors and omissions, which consistently, and without basis, favored [Mother]. Detailed and accurate objections had been raised by [Father's] counsel."

The court then reviewed the hearings in November 2020 and February 2021. It described the November hearing (during which the court suggested the parties' record their physical custody exchanges) as "the very last date any reasonable litigant could rationally feel as though the court was doing anything other than moving them towards resolution." In discussing the February 2021 hearing (the hearing where the court said it had properly noticed sanctions itself), the court said there could be no

10

doubt it was "intently evaluating and addressing any and all issues, without bias."[5]

The court addressed the June 2021 hearing, remarking it had started well, and the sanctions "already noticed . . . were likely to move downward" as the parties were on the verge of ending the case. Then, in the court's view, Mother "without good cause" asked to limit video interactions between Father and Minor to Zoom so that she could record them, a request the court deemed "alarming, outrageous, unbelievable, tone deaf, counterproductive, and/or inconsistent with Family Code 271." The court stated it "cautiously began to indicate the problem with her request" at which point Mother's attorney interrupted "in a rude and abrupt manner" and accused the court of bias. The family court also remarked upon the demeanor of Mother and her attorney at the hearing, stating that at one point the court said "the parties should remain calm until the record is complete."

The court opined it was clear "that the court was exactly correct in discerning the mindset that was inconsistent with Family Code 3040" and found "the court's initial concerns have continued to permeate the entirety of the litigation." The court sanctioned Mother in the amount of $10,000 and separately sanctioned her attorney Hill as well, also in the amount of $10,000.

---

[5] In the course of bristling at what it characterized as suggestions from Mother and Hill that the court was "engaging in some quest to favor fathers over mothers," the court pointed to what it described as "extremely soft, mother-friendly, pendente lite orders" that it made at the initial hearing in the case.

## II. DISCUSSION

As to Hill, the family court's sanctions award is obviously wrong: Section 271 permits imposing sanctions only on a party, not a party's attorney, and the sanctions award against Hill is therefore improper. As against Mother, the sanctions award is error too, even if a marginally less obvious one. There is a question as to whether section 271 even authorizes a family court to issue sanctions on its own motion,[6] but we need not decide that issue because the conduct relied on by the family court to impose sanctions here, even considered in the aggregate, does not rise to the level of meriting sanctions. The family court abused its discretion in concluding otherwise.

### A.    *Family Code Section 271*

"Section 271 provides that a family court may impose an award of attorney fees and costs 'in the nature of a sanction' where the conduct of a party or attorney 'frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.' (§ 271, subd. (a).)" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316.) "Expressed another

---

[6]    Compare § 271, subd. (a) ["In order to obtain an award under this section, *the party requesting* an award of attorney's fees and costs is not required to demonstrate any financial need for the award"], italics added with Code Civ. Proc., § 128.5, subd. (c) [expenses may be imposed pursuant to section "on the court's own motion"]; Code Civ. Proc., § 128.7, subd. (c)(2) [court may enter order describing sanctionable conduct "[o]n its own motion"]; Code Civ. Proc., § 177.5 [court may impose sanctions under section "on the court's own motion"].

way, section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel." (*Id.* at 1318.) "We review an award of attorney fees and costs under section 271 for abuse of discretion." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291.)

> B. *The Family Court Erred by Sanctioning Mother's Attorney*

Section 271, subdivision (c) provides that "[a]n award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income *of the party* against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property." (§ 271, subd. (c), italics added.) Similarly, section 271, subdivision (b) provides sanctions shall be imposed "only after notice *to the party* against whom the sanction is proposed to be imposed and opportunity *for that party* to be heard." (§ 271, subd. (b); italics added.)

As should be clear from the text of the statute and ample precedent, the provisions of section 271 do not provide for sanctions to be imposed on counsel for a party. (E.g., *Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 403, fn. 7 [sanctions under section 271 may only be imposed on a party, not an attorney]; *Orange County Dept. of Child Support Services v. Superior Court* (2005) 129 Cal.App.4th 798, 804 [sanctions under section 271 "can be imposed only against a party"]; see also *Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 629 [including attorneys in sanctions provisions under section 271 would be redundant

13

because attorneys are subject to sanctions for such behavior under Code of Civil Procedure section 128.5].)

The only ground on which the family court here made its sanctions order was section 271. Because an attorney may not be ordered to pay a sanction under that statute, the family court's order compelling Hill to pay $10,000 in sanctions was improper and must be reversed.

### C. *Sanctions Were Not Warranted Against Mother Either*

The family court's final recitation of the grounds for its award of sanctions included: (1) Mother's early declarations in the case; (2) Mother's section 170.1 motion to disqualify the judge for bias; (3) Mother's proposed judgment; and (4) Mother's request that Father's video calls with Minor take place on Zoom only. Threaded throughout the court's recitation were (1) the court's characterizations of Mother's requests as "entitled," "controlling," and "overreaching," and (2) its own umbrage at being accused of bias and being the subject of a disqualification motion. Individually or collectively, this is not litigation behavior that a judge, staying within the bounds of reason, could conclude merited sanctions at all—much less a $20,000 sanctions award (if we count the improper amount assessed against counsel too). (See generally *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339 [""'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason'""].)

The family court's discussion of the grounds for its sanctions order referenced what it called Mother's controlling "mindset." Yet section 271 provides for sanctions where the *conduct* of a party or attorney frustrates the policy of the law to promote settlement. The record indicates that, in sanctioning

14

Mother for the requests she made in her early declaration and for requesting video calls take place on Zoom, the court was principally sanctioning Mother not for taking actions that frustrated settlement efforts but for taking litigation positions with which the court disagreed.[7] That is improper.

Mother's motion to seek disqualification of the family court judge and her objection to perceived bias again at the February 2021 hearing were not sanctionable either. The family court itself had it right when it stated during an earlier hearing that "Petitioner has the right to believe I was biased. She always has that right, and I can't sanction her for that." But the record reveals the court was unable to hold to that standard and did what it said it could not by improperly relying on Mother's disqualification motion and renewed objection to impose sanctions.[8]

---

[7]     As to the matter of Zoom recording, the family court itself had previously encouraged the parties to record each other (when participating in physical custody exchanges—to avoid disputes about what occurred).

[8]     The best that can be said for the family court's reliance on the disqualification motion as grounds for sanctions is that the court believed what it thought was a procedural defect in the motion (purported untimeliness) was fair game even if the substance was not. There are several problems with that, however. One, the family court also cited counsel's renewal of a bias objection during the June 2021 hearing as reason for sanctions, and there was undisputedly no timeliness problem with that objection. Two, one cannot read this appellate record without coming away with the impression that the family court was just miffed about being accused of bias. On a personal level, that is understandable. But exercise of the judicial function

With these grounds for sanctions appropriately put aside, that leaves only Mother's filing of a proposed judgment with errors. That cannot justify the sanctions award here, which is infected with other inappropriate considerations that we have detailed. Further, the particular errors in the proposed judgment were not so significant as to merit sanctions anyway.

---

requires more, and the mere accusation of bias here is not reason for a five-figure sanction—or any sanction, for that matter. Three, the filing of a motion is generally not sanctionable under section 271 unless it is "so devoid of merit that no reasonable person would have pursued it." (*In re Marriage of Abrams* (2003) 105 Cal.App.4th 979, 991.) Procedurally, the motion was not obviously untimely in light of Mother's retention of counsel and the date on which the transcript of the pertinent hearing was received. Substantively, Mother's motion to disqualify the judge was not utterly devoid of merit either. A non-frivolous argument could be made that the family court's statements at the December 2019 hearing suggested the court was allowing an apparent view about how mothers generally act (the court stated its remarks during the hearing would "alert mothers" to the law in the state of California) to color its view of Mother's then-self-represented litigation of her case.

DISPOSITION

The family court's order is reversed.  Appellants shall bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION**

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

17